HUNTER v. HUNTER.

4-5437

127 S. W. 2d 249

Opinion delivered April 10, 1939.

*Scipio A. Jones,* for appellant.

*Tom F. Digby,* for appellee.

HUMPHREYS, J.   K. Hunter, a widower, married Minnie, one of the appellees herein, in 1916.

At that time he was the owner of lots 4 and 5 in block 18, East Argenta Addition to the city of North Little Rock, Arkansas.

K. Hunter resided upon the property and after the marriage he and Minnie resided upon the property until his death in April or May, 1938, and Minnie has continued to reside thereon since his death.

Two houses were upon the property when they married and afterwards they built two more houses on it.

K. Hunter was threatened with a suit for slander soon after their marriage and in order to protect said property from being levied upon in the event a judgment should be obtained against him, he and Minnie executed a deed thereto to his children, by a former wife, five in number.   James Hunter is the only surviving child by his former marriage, four of them having died and the record reflects that two of them were dead at the time of the execution of the deed.   The deed was a warranty deed in form duly executed and acknowledged and recites a consideration of $1.   K. Hunter took the deed to Lucinda Washington, an aunt of James Hunter, and directed her to deliver it to James, which she did sometime in the year 1933.   Lucinda Washington died in 1936.   James Hunter had the deed recorded on March 31, 1938, a short time after K. Hunter, his father, died.

On January 11, 1935, K. Hunter executed a deed for the same lots to Minnie Hunter which she had recorded on the same day.

The taxes were not paid upon the property and it forfeited to the state and L. A. Bland loaned them money to redeem same and on February 11, 1917, K. Hunter and Minnie, his wife, executed a mortgage for the sum of $175, which was not recorded. On September 13, 1937, they executed a mortgage to L. A. Bland for $305 which included the amount due upon the first mortgage and upon which they have paid $10 a month since September 13, 1937.

On April 7, 1938, James Hunter executed a mortgage to Scipio A. Jones to secure the payment of the sum of $250.

On May 2, 1938, Minnie Hunter and L. A. Bland brought suit against James Hunter and Scipio A. Jones to cancel the deed executed by K. Hunter and Minnie Hunter to James Hunter and his sisters and brothers on the 16th day of August, 1917, as a cloud upon Minnie Hunter's title to said land on the ground that same was void and also to cancel the mortgage executed by James Hunter to Scipio Jones.

James Hunter and Scipio Jones filed an answer denying the material allegations in the complaint and pleading that the deed executed by K. Hunter and Minnie Hunter on January 11, 1935, was void.

The cause was submitted to the trial court upon the pleadings and evidence introduced by the respective parties from which the court found that the deed executed by K. Hunter and Minnie Hunter, his wife, to James Hunter and others on August 16, 1917, was void and that the mortgage executed by James Hunter to Scipio Jones on April 11, 1938, was void and set the deed and mortgage aside as a cloud upon the title of Minnie Hunter and vested the title absolutely in Minnie Hunter, from which finding and decree an appeal has been duly prosecuted to this court.

The question involved on this appeal is whether K. Hunter and Minnie Hunter intended by their conveyance of August 16, 1917, to convey the legal title to said lots to the grantees therein and, if so, whether there was a delivery of the deed. If such was their intention and the deed was delivered it passed the legal title to the grantees,

and the grantors had no further interest therein. The questions of intent by the grantors and the delivery of the deed are questions of fact.

The rule is that a conveyance of land by deed passes title thereto from the grantor to the grantee if so drawn as to convey a present title if delivered and accepted by the grantee. This court said, in the case of *Russell* v. *May,* 77 Ark. 89, 90 S. W. 617, that: "A delivery of a deed is essential to its validity. It cannot take effect without delivery, and what is a delivery depends upon the intention of the grantor. Any disposal of a deed, accompanied by acts, words or circumstances, which clearly indicate that the grantor intends that it shall take effect as a conveyance, is a sufficient delivery." This rule was reiterated by this court in the case of *Faulkner* v. *Feazel,* 113 Ark. 289, 168 S. W. 568. This court also said in the case of *Reynolds* v. *Balding,* 183 Ark. 397, 36 S. W. 2d 402, that: "It is well settled in this state that, if a deed duly executed and so drawn as to convey a present title, is deposited by the grantor with a third person with directions to deliver it to the grantee after the death of the grantor, and the grantor reserves no dominion or control over the deed, the deed is not an attempted testamentary disposition, but is effective as a conveyance of the title as of the date when the deed is deposited." This court also said in the same case that: "It is well settled in this state that the acts and declarations of the grantor or of the person in possession of the tract of land are admissible to show the character and extent of his possession, but not to contradict his deed to another. It has always been held by this court that the declarations of a grantor against the title of his grantee, made in the latter's absence, are not admissible in evidence to defeat the title of the grantee."

The deed in the instant case from K. Hunter and Minnie Hunter of date August 16, 1917, was a warranty deed in form, duly executed and acknowledged and conveyed the land in controversy to James Hunter and other children of K. Hunter so it is unnecessary to set out the deed *in extenso.* The only evidence in the record as to

the purpose for which it was executed comes from Appellee, Minnie Hunter, and the only evidence as to the delivery of the deed to a third party for the grantees named therein comes from Louis Washington.

Appellee testified that her husband, K. Hunter, being threatened with a suit for slander asked her to join in the execution of the deed to his children, and that it was made to head off the suit; that it was not her intention, when she joined her husband in the execution of the deed, to actually convey title, but that it was for the purpose of evading the possibility of a judgment coming out of the threatened law suit, and that the deed was not placed on record; that later her husband told her that James Hunter had gotten the deed, and appeared very much wrought up over this situation, and expressed a desire for the return of his deed, and later made nearly daily trips to the barber shop, begging his son, James, for the return of the deed; that she accompanied her husband the last time he went to the barber shop and heard him demand the return of the deed and that James refused to return it to his father; that James assured them the deed had not been recorded and they went to the court house and searched the record and found that it had not been recorded; that subsequent to the discovery that the deed had not been recorded her husband, K. Hunter, made a deed therefor to her in 1935.

Louis Washington testified that the deed from K. Hunter and Minnie Hunter to Hunter's children was brought by K. Hunter, who left it with him and his wife, Lucinda; that Lucinda was a sister-in-law of K. Hunter; at the time he delivered the deed, K. Hunter told his wife he wanted her to keep the deed and give it to James Hunter, since he did not know whether he would ever see him or not any more, and for her not to give it to anybody else but him; that Lucinda delivered the deed to James in 1933 before K. Hunter died; that James came here from Chicago and when he came to see them she presented the deed to him and said that his father gave her the deed to keep and turn over to him, and said she was sick and weak and would probably pass out before

she ever saw him again and that she gave the deed to him at that time; that his wife died February 3, 1936. On cross-examination witness said that he disremember-ed whether K. Hunter told his wife to keep the deed until he died and give it to James or whether he told her to give it to James before he died but that he told her to be sure to give it to James and no one else; that at the time the deed was delivered to James Hunter all the grantees therein except James Hunter were dead.

James Hunter testified that he received the deed from Lucinda Washington, who was an aunt of his; that his father came to see him several times and told him to keep the deed that the property was for him and he want-ed him to have it; that after he received the deed his father told him to keep the deed and not to give it up; that his father told him he wanted to stay on the property during his lifetime and that he had a settlement or agree-ment with his wife; that his father never told him about having executed the deed in 1935 to his wife and of having recorded it; that after his father died he recorded his deed and executed a mortgage on the property to Scipio Jones for $250.

We think the evidence in this case brings it well within the rules of law heretofore announced by this court and set out herein.

According to a preponderance of the testimony the grantors intended to part with the title when they execut-ed the deed so as to protect the property against any judgment which might be recovered against K. Hunter for slander and that the intention was to convey a present title and that the conveyance became an effective con-veyance when K. Hunter turned the deed over to Lucinda Washington to give to James Hunter without any reser-vation and without retaining dominion or control over the deed. The delivery of the deed to Lucinda Washing-ton was as effective as if it had been handed to James himself.

K. Hunter lived many years after he and his wife executed the deed for the land to James Hunter and oth-ers and knew that the deed was in James' possession and

did not bring any suit to set aside or cancel the deed. In fact no contention is now made that James practiced any kind of fraud in obtaining the deed. According to the testimony of Minnie Hunter he requested his son to return the deed to him and on one occasion demanded the return of the deed, but this was long before he died and her testimony could not be construed as indicating that James Hunter had perpetrated any fraud in obtaining possession of the deed.

Our interpretation of the testimony under the law is that the title of the property passed to the grantees in the deed when the deed was turned over to Lucinda Washington for James Hunter. It was a delivery to her for him and became effective as a conveyance on that date.

The decree of the court is, therefore, reversed and remanded with directions to uphold the validity of the deed executed by K. Hunter and Minnie Hunter on August 16, 1917, to the grantees therein and the mortgage thereon from James Hunter to Scipio Jones and to quiet the title to said lots in James Hunter.