MARJORIE MILLER *v.* MARY JANE RIEGLER ET AL

5-4283                                              419 S. W. 2d 599

### Opinion delivered October 23, 1967

*Leonard L. Scott*, for appellant.

*George E. Lusk Jr.* and *Robert C. Downie*, for appellees.

CARLETON HARRIS, Chief Justice. Marjorie Miller, appellant herein, and Mary Jane Riegler, appellee, are sisters, and reside in Little Rock. Minnie Wagar, who died in Little Rock, testate, on August 8, 1963, was an aunt of these two sisters. In March, 1957, Mrs. Wagar lived in Long Beach, California. She had been ill, and Mrs. Riegler and her mother went to California and brought Mrs. Wagar back to this city. The latter lived with appellee, paying $100.00 per month for room and board, until January, 1958, when she went to a nursing home, staying there until her death. A joint checking account was opened with Mrs. Wagar's funds in the names of Minnie M. Wagar and Mary Jane Riegler, and a joint safe deposit box was taken in their names, and Mrs. Wagar's property was placed there. On July 23, 1957, Mrs. Wagar, then 81 years of age, executed her last will and testament, and on July 25, she caused several hundred shares of stocks of the approximate value of $45,000.00 (representing about one-half of stocks owned by Mrs. Wagar) to be transferred to the joint names of Mrs. Riegler and herself. The new stock certificates reflected the owners of the stock to be "Mrs. Minnie W. Wagar and Mrs. Mary Jane Riegler, as joint tenants with right of survivorship and not as tenants in common." It was agreed that the aunt would receive the dividends for the balance of her life. Subsequently, the dividends from these stocks were placed in the joint checking account, and these dividends were reported on the Federal Income Tax returns of Mrs. Wagar. As previously stated, Mrs. Wagar departed this life in August, 1963, and her will was duly admitted to probate in Pulaski County. Mrs. Riegler, the executrix of the estate, recognized that the money in the joint checking account was a part of the estate, but she claimed absolute ownership of the stock as the survivor of the

joint tenancy. Thereupon, Mrs. Miller instituted suit, asserting that the stocks that were still held in the joint names at date of Mrs. Wagar's death actually belonged solely to the deceased (and accordingly were a part of her estate), and should be administered as such.[1] Appellant asked for judgment for one-half of the stocks and one-half of the value of any that had been converted.[2] Mrs. Riegler answered, denying that the transfer of the stock was for the convenience of Mrs. Wagar, asserted that it was a gift to Mrs. Riegler, and that Mrs. Miller accordingly had no interest. On trial, the Pulaski Chancery Court (1st Division) held:

"That all of the stock certificates involved in this suit (including all stock certificates sold by Mary Jane Riegler prior to the institution of this suit and all stock certificates held by Mary Jane Riegler at the commencement of this suit which had been reissued in her name individually) were originally issued in the name of the testatrix and Mary Jane Riegler as joint tenants with right of survivorship and not as tenants in common, and all of said stocks are the sole property in fee simple absolute of Mary Jane Riegler, individually, and all dividends received from this stock are the sole property in fee simple absolute of Mary Jane Riegler, individually."

---

[1]Under Mrs. Wagar's will, after making some specific bequests, the residue and remainder of the estate was devised to Mrs. Riegler in trust, the income of the principal of the trust estate to be distributed in convenient installments to her brother, George Henry Miller, the father of appellant and appellee, during his lifetime. The trustee was also authorized to use any part of the principal as might be required to properly take care of the brother. The will further provided that, upon the death of George Henry Miller, or upon the death of Mrs. Wagar (if the brother died before the testatrix), the trust estate was to be divided equally between Mrs. Riegler and Marjorie Nicolini (Miller), or in event of the death of either niece, that share to the child or children of the deceased relative.

[2]There was also a prayer in the complaint for certain items of personal property to which Mrs. Miller made claim, but the Chancellor's adverse decision on this point has not been appealed.

From the decree so entered, appellant brings this appeal. For reversal, it is asserted that the stocks involved in this case, which were held in the joint names of Minnie M. Wagar and Mary Jane Riegler at the time of the death of Mrs. Wagar, were the property of Minnie M. Wagar, and the 1957 transfer of the stocks into the joint names of Minnie M. Wagar and Mary Jane Riegler did not constitute or create a true joint tenancy, or gift, or otherwise vest any ownership rights in Mrs. Riegler.

It is first argued that the circumstances surrounding the transfer of the stocks clearly show that there was no intention by the aunt of making a gift to her niece. It is pointed out that, though reissued in the joint names of the two women, the stocks were returned to a joint safe deposit box (which had been acquired in their names on May 27, 1957), and that all other property in the box belonged to Mrs. Wagar. It is likewise pointed out that all of the dividends from all stocks including those held jointly, and those simply in Mrs. Wagar's name, were placed in the joint bank account at the Worthen Bank. Further, it is mentioned that the dividends from the joint stocks were reported solely on the federal income tax return of the aunt. Mrs. Wagar also received a $65.00 per month pension, which was placed in the joint bank account. No separate monies or funds of Mrs. Riegler were deposited in this account, and all checks written on it were solely for the debts or expenditures of Mrs. Wagar. The checks were all written by appellee, with the exception of five or six of $100.00 each, which were given to Mrs. Riegler, and signed by Mrs. Wagar in payment of room and board. These facts are all argued by appellant as evidence that Mrs. Wagar had no intention, in creating the joint tenancy, of giving an interest in the transferred stock to Mrs. Riegler, but only made the transfer for the purpose of convenience, i. e., to enable Mrs. Riegler to handle financial transactions for the aunt with handiness. Appellant also calls attention to the fact that Mrs. Riegler recognized that

funds in the joint bank account (with her aunt) were properly a part of the estate, and such funds were listed as assets. It is also argued that it simply isn't reasonable that Mrs. Wagar would give this amount of stock to a person (Mrs. Riegler) that she had only seen three or four times in her life before moving to Little Rock.[3] Mention is made of the fact that the deceased was apparently very devoted to her brother, and that it was her principal intent, as evidenced by her will, that he be taken care of the rest of his life; that the will provided that, upon his death, the two daughters should take the residue of the estate. We see little, if any, significance to the fact that Mrs. Wagar held a high regard for her brother, as expressed in her will. The proof reflects that Mr. Miller had an income of over $200.00 per month, was older than Mrs. Wagar, and certainly the income, or even the principal, if needed, of the remaining $45,-000.00 worth of stock (still held by Mrs. Wagar) would have been considered adequate to take care of his needs. For that matter, however affectionately Mrs. Wagar might have felt toward her brother, she had made no provision for him until the will of July, 1957, was executed. At any rate, appellant's arguments, heretofore quoted, are all based on surmise and speculation. It is sometimes difficult to ascertain people's motives, but it is generally true, even with relatives, that a decedent feels closer to, or likes, one relative more than another. Here, one fact instantly stands out, *viz.*, That Mrs. Wagar lived with Mrs. Riegler for nearly a year, and at the time of making the stock transfer, evidently planned to live with appellee for the balance of her life, this plan being altered because of illness suffered by the aunt following a fall in November of 1957. Not only that, but the very fact that the aunt would pick Mrs. Riegler to handle her business for her (which is not disputed) indicates that she had more confidence in, or closer ties with, appellee than with appellant. Still again, Mrs. Riegler was named Executrix of the Wagar estate,

---

[3] The record indicates that this was about the same number of times that Mrs. Miller had seen her aunt.

as well as Trustee. Of course, if the transfer was only made for convenience, one immediately wonders why all stocks were not transferred, instead of only half.

Be that as it may, litigation cannot be decided on surmise, or what someone else might have done under similar circumstances. It can only be decided on the evidence presented in court. The testimony heavily preponderates to the effect that the transfer was made at a time when Mrs. Wagar was fully possessed of all her faculties, and understood exactly what was being done. Only three people testified, Mrs. Riegler, Mrs. Miller, and Warren Bass, a certified public accountant of Little Rock, who handled tax matters for Mrs. Wagar.

Mrs. Miller testified that it was her ''understanding'' from a conversation with her sister that the latter was going to take care of the aunt's affairs, and the transfer of stock had been made for convenience only; she also stated that her sister said that, though part of the estate was in her (appellee's) name, everything would be divided ''50-50.'' Mrs. Riegler denied making these statements, and said that she had informed Mrs. Miller that everything *in the estate* would be divided ''50-50.''

The strongest evidence introduced was that of Mr. Bass, who testified as follows:

Mrs. Wagar was a small lady, quite bright, alert, knowledgeable, and very interesting to talk to. She knew the property she owned, and planned a transfer of stock along with executing the will. She stated that she intended to make her home with Mrs. Riegler the rest of her life; she also said that there were two people she cared for, one being Mrs. Riegler, and the other being the brother.

The witness made a list of the stocks which were to be transferred, such list being offered as an exhibit at

the trial. He discussed the matter with Mrs. Wagar several times. Bass was very emphatic in stating that Mrs. Wagar knew exactly what she was doing, and that it was her intention to transfer the $45,000.00 worth of stock to Mrs. Riegler as a joint tenant. We think it was clearly established that the aunt, of her own free will and accord, made the transfer with full knowledge that the stocks transferred would not be a part of her estate, and the survivor of the joint tenancy created would take the full amount.

It is next contended that the requisites of a joint tenancy were not met, and accordingly, the gift must fail. It is first pointed out that there is no statutory provision here involved, such as those which cover savings and loan associations and banks; that accordingly, when a joint tenancy is created, the four "unities" must exist. These are set out in the case of *Stewart* v. *Tucker,* 208 Ark. 612, 188 S. W. 2d 125, and are listed, in a quote from 33 C. J. 907, as follows:

"(1) unity of interest (2) unity of title (3) unity of time (4) unity of possession. That is, each of the owners must have one and the same interest, conveyed by the same act or instrument, to vest at one and the same time . . . and each must have the entire possession of every parcel of the property held in joint tenancy as well as of the whole."

Let it first be said that we have already, to some degree, departed from the rule of the four unities. In *Ebrite* v. *Brookhyser,* 219 Ark. 676, 244 S. W. 2d 625, George Brookhyser conveyed real property, which he owned, from himself to his wife and himself as tenants by the entirety. The trial court held that an estate by the entirety had been created, and Ebrite appealed to this court. There too, *Stewart* v. *Tucker, supra,* was principally relied upon, and it was contended that essential requirements to create the estate had not been complied with, the wife's undivided half interest not

having been acquired at the same time as the interest retained by her husband; that the husband could not convey to himself, and therefore could have acquired no new title by virtue of his own deed. In upholding the trial court, we stated that there was no reason why parties should not be able to do directly that which they could undoubtedly do indirectly through the device of a strawman. The late Justice J. S. Holt, writing for this court, stated:

"We cannot agree with this reasoning. A complete answer is given in what is now the leading case of In re *Klatlz's Estate*, 216 N. Y. 83, 110 N. E. 181. There a majority of the judges, Bartlett, Collin, Hiscock, and Cardozo, agreed that under modern married women's property acts a husband may create a tenancy by the entirety by a conveyance to himself and his wife. The same argument as to the unity of time was presented there as here, but Judge Collin answered: 'The husband did not convey to himself, but to a legal unity or entity which was the consolidation of himself and another.' "

This decision certainly has not been viewed as unsound for there can be no logic in preventing a spouse from directly giving to his or her marriage partner equal rights in property that is owned, when the same result was permitted by creating the estate through a third party who really held no interest in the property at all.

Likewise, it also appears that the same view is being widely followed with reference to joint tenancy. The landmark case is probably that of *Colson* v. *Baker et al*, 87 N. Y. Supp. 238. The issue was stated in the opening line of the opinion, as follows:

"The question to be determined on this motion is whether a person seized in fee of an estate can, by a direct grant, deed the property to another and himself in joint tenancy, instead of tenancy in common, without the intervention of a third party."

A part of the logic used by the court is interesting. It is pointed out that the unity of time refers to joint parties becoming joint tenants at the same time. As stated:

"* * * When, therefore, he attempts to create for himself and his grantee an estate in joint tenancy out of his fee by a direct deed to the grantee, why does not the joint tenancy arise at the same time and by the same act? I think it does. Of course, each joint tenant has the same interest by such a deed, and each is in possession of the whole like tenants in common.

"In all references to the 'four unities' requisite to create a joint tenancy, I find nothing that prevents their existence or creation by the act of the grantor for himself and another as well as by his act for two other persons."

In the case of *Kleemann* v. *Sheridan* (Ariz.), 256 P. 2d 553, there is a succinct discussion of the issue with which we are here concerned. There, the question was whether a joint tenancy in personal property had been created by two sisters who, in leasing a safe deposit box, recited in writing that all property theretofore or thereafter placed in the box was the joint property of both and would pass to the survivor. The Arizona Supreme Court discussed the history of joint tenancy, saying:

"Before entering upon a discussion of the points raised by appellant it will perhaps be pertinent to briefly recount the common-law essentials to create a joint tenancy. They are unity of time, unity of title, unity of interest, unity of possession. Such tenancy could not arise by descent or other operation of the law but may arise by grant, devise or contract. Of course the right of survivorship is inherent in the joint tenancy estate and without which joint tenancy does not exist. At first joint tenancy under the common law involved only in-

terest in land but at an early date it was recognized as applying to personal property as well. At common law a person could not make a conveyance to himself. An attempt to convey land to himself and to another resulted in a conveyance of only one-half of the property to the other and the grantor still held his moiety under his original title, thus destroying two essentials of joint tenancy, unity of time and of title. The result of such attempt was to create a tenancy in common.

"The same rule would seem to logically apply to personal property and is the rule of law relating to both real and personal property in many of the states of the Union including Maine, Illinois, Wisconsin and Nebraska, but the majority of the state courts have held that the common-law concept of the four unity essentials should give way to the intention of the parties and that a joint tenancy may be created by a conveyance from one to himself and another as joint tenants. California has passed a law making the rule applicable to husband and wife.

"We have apparently aligned ourselves with the majority rule insofar as personal property, the title to which passes by delivery, is concerned.* * *

"Another characteristic of joint tenancy is that it is not testamentary but 'is a present estate in which both joint tenants are seized in the case of real estate, and possession in case of personal property, per my et per tout,' that is, such joint tenant is seized by the half as well as by the whole. The right of survivorship in a joint tenancy therefore does not pass anything from the deceased to the surviving joint tenant. Inasmuch as both cotenants in a joint tenancy are possessors and owners per tout, *i. e.*, of the whole, the title of the first joint tenant who dies merely terminates and the survivor continues to possess and own the whole of the estate as before."

The court, mentioning that it was holding in line with the majority rule, and that it was the intention of the sisters to create a joint tenancy, held that that estate had been created. Numerous other cases also hold that the intention of the parties is controlling, rather than the common law concept of the four unities.

Here, we think the intention of Mrs. Wagar is established, *i. e.*, to create a joint tenancy, and we can see no more reason to hold to the old premise that the four unities must exist, than the jurisdictions (and numerous others) just quoted, particularly when we have already, as earlier pointed out, to some extent discarded that concept of the law.

However, appellant also relies upon the fact that Mrs. Wagar and Mrs. Riegler agreed that Mrs. Wagar was to retain—and did retain—the dividends[5] from the stocks jointly transferred. This, says appellant, is fatal to the creation of a joint tenancy for the reason that the two parties did not have equal rights to share in the enjoyment of the property during their lifetime. In connection with this argument, it is also urged that the retaining of the dividends from the transferred stock prevents the transfer from acquiring the status of a gift. We do not agree with these arguments. Joint ten-

---

[4]See, *inter alia, Greenwood* v. *Commissioner of Internal Revenue*, 9 Cir., 134 F. 2d 915; *Switzer* v. *Pratt*, 237 Iowa 788, 23 N. W. 2d 837; *Conlee* v. *Conlee*, 222 Iowa 561, 269 N. W. 259; *Creek* v. *Union National Bank in Kansas City (Mo.)*, 266 S. W. 2d 737. These cases cite numerous others to the same effect.

[5]It is also argued, though not forcefully, that Mrs. Wagar likewise retained an interest in the principal. This contention is based upon some answers given on cross-examination by Mrs. Riegler and Mr. Bass, but we think the evidence falls far short of establishing any retention by Mrs. Wagar of an interest in the principal. Actually, the testimony is confusing as to whether the dividends were to be, in all events, retained by Mrs. Wagar, or would only be retained if they were needed for her support. The legal question would be the same, but we treat the matter as though the withholding of the dividends was definite.

ants may agree between (or among) themselves as to the use made of the property. In 48 C. J. S. under "Joint Tenancy," Section 10, Page 933, we find:

"Joint tenants may contract with each other concerning the use of the common property, as for the exclusive use of the property by one of them, or the division of the income from the property."

In *Tindall et al* v. *Yeats et al* (Ill.), 64 N. E. 2d 903, the question was whether a Mrs. Adams and Mrs. Yeats were joint tenants or tenants in common. The trial court held that they were joint tenants, and this holding was appealed to the Supreme Court. One of the points argued by appellant was that Mrs. Yeats had agreed that Mrs. Adams should have all rents from the land, as well as the possession thereof during the life of Mrs. Adams, and this, said appellant, prevented the estate from being one of joint tenancy. The Illinois Supreme Court disagreed, holding that it was clear that it was the intention of the parties that Mrs. Adams should enjoy the possession of the entire estate; that this was done with the permission and consent of Mrs. Yeats, and that the parties had the right to make this agreement.[c] And why should this not be permissible?

---

[c]Incidentally, Illinois is one of the states that still holds that the four unities must be observed in creating a joint tenancy. Mrs. Adams was the original owner of the property, and a conveyance from a third party was used in effecting the joint tenancy. At the time of the creation of the joint tenancy, Mrs. Adams and Mrs. Yeats entered into the following agreement:

"Whereas the First Party has this day and date vested title in the parties hereto as joint tenants in the Marshall County, Illinois, farm owned by the First Party, all evidenced by certain deeds executed by the First Party and Martin A. Adams, her husband, and Walter C. Overbeck, all of the within date;

"Now Therefore, in consideration of having vested title of said real estate as aforesaid, The Second Party herein, in consideration thereof, agrees with the First Party that said First Party shall have all the rentals from said real estate and the possession thereof during the term of her natural life, with power and authority to insure the buildings thereon, make repairs and do such other things

Why should owners of property, real or personal, be prohibited from doing as they desire with that property, so long as the disposition is not for an immoral purpose, or against public policy?

Nor do we agree with appellant's argument with reference to the invalidity of the gift. Appellant states in her reply brief:

"We submit it cannot be that there is any difference in the presumptions applicable to or the basic rules essential to the creation of a gift, whether in the form of outright ownership, joint tenancy, or otherwise, except such as might be inherent in the nature of the particular estate created. * * * If there is a retention of a right to income or principal, or both, inconsistent with the estate ostensibly donated, so that it is not made 'beyond recall,' then we submit it is incomplete and ineffectual as between the parties. * * * And, as pointed out in our brief in main, to permit a joint tenancy with retention of all income is nothing more than a void testamentary arrangement."

This stock was given to Mrs. Riegler, and placed in the lock box. We have shown, in the citations mentioned, that the joint tenancy was not affected, even though Mrs. Riegler was not to share in the dividends. We here point out that, in the creation of the joint tenancy, Mrs. Riegler did not first become possessed of her interest or rights in the property when Mrs. Wagar died; rather, she acquired a *present* interest when the estate was created, i. e., her rights as a joint tenant had already vested before her aunt's death. This fact, of

---

thereon as she could or would do were she the sole and exclusive owner thereof. This Agreement shall not, however, in any manner affect the joint tenancy of said real estate nor the legal incidents accompanying same.

"Dated this 31st day of May, A. D. 1939.

"Grace M. Adams,     (Seal)
"Margaret Isabelle Yeats, (Seal)"

course, silences the argument that a joint tenancy with retention of income is nothing but a void testamentary arrangement.

Affirmed.