FIRST NATIONAL BANK AND TRUST COMPANY of Rogers, Representative of the Estate of F.H. "Mike" Hummel *v.* ESTATE OF Hal B. HUMMEL, First State Bank of Springdale, and Harold D. and Connie S. Calloway

CA 88-82                                              758 S.W.2d 418

Court of Appeals of Arkansas
Division I
Opinion delivered October 12, 1988

314

*Williams, Schrantz & Wood, P.A.*, for appellant.

*Davis & Associates, P.A.*, by: *Charles E. Davis*, for appellee Estate of Hal B. Hummel.

JAMES R. COOPER, Judge. The appellant in this case is the personal representative of the estate of F.H. "Mike" Hummel. In February 1980, Mike conveyed by warranty deed property known as the "auction house" to himself and his brother, Hal B. Hummel, as joint tenants with rights of survivorship. The appellee in this case is the estate of Hal Hummel, who originally was a defendant, but died before the cause was heard.

The appellant brought suit in the Benton County Chancery Court, seeking a declaratory judgment that the proceeds from a note and mortgage from the sale of the auction house were part of Mike's estate. The chancellor found that the note and mortgage should remain in Hal's estate. On appeal, the appellant argues that the deed was an invalid testamentary disposition; that there was no valid delivery of the deed; and that the deed worked a fraud upon Mike's wife, Josephine, and deprived her of her dower rights in the property. We affirm.

Shortly after Mike created the joint tenancy, he married Josephine on February 22, 1980, and moved to Missouri. In April 1980, Mike sold the auction house to Johnnie and Ora Bassett. The real estate sales agreement and warranty deed were executed by Mike alone. The note and mortgage given to secure the loan were executed in favor of Mike.

On December 1, 1982, an escrow account was established at the appellant bank, First National Bank of Rogers, to receive the note payments from the Bassetts. The escrow agreement was signed solely by Mike. Payments received by the Bank were placed into a savings account held jointly by Mike and Hal with rights of survivorship. The account was closed by Hal three days after Mike's death. The note and mortgage were assumed by appellees Harold and Connie Calloway on January 9, 1985. The agreement for assumption identifies only Mike as the lender. At the time of Mike's death on June 15, 1986, the deed creating the joint tenancy was found in Hal's safe. Hal recorded it after Mike's death.

Copies of Mike's income tax returns for the years 1982 through 1985 were entered into evidence. The returns reflect that

interest income from the Bassett note was paid solely to Mike.

The appellant first argues that the deed from Mike to himself and Hal as joint tenants was an attempt by Mike to make a testamentary disposition because Mike did not intend Hal to have a present interest in the property. At trial, Lois Buchannan, a sister of both Hal and Mike, testified that Hal was instructed by Mike not to file the deed until after Mike had died. The appellant argues that this, coupled with the fact that Mike alone sold the property, indicates that the deed was in reality a "will."

In the cases relied upon by the appellant, *Ransom v. Ransom*, 202 Ark. 123, 149 S.W.2d 937 (1941), and *Broomfield v. Broomfield*, 242 Ark. 355, 413 S.W.2d 657 (1967), the grantors did not create joint tenancies in themselves; rather, the grantors were attempting to divest themselves of all their interest in the property. These cases turned on whether there was delivery, which we will shortly discuss. We are not persuaded that Mike's continued exercise of control over the property defeated Hal's interest. A joint tenancy is a present estate in which *both* joint tenants are seized of the real estate. *Miller v. Riegler*, 243 Ark. 251, 419 S.W.2d 599 (1967) (emphasis added). Both cotenants are possessors and owners of the whole estate. *Id.* Mike's continued involvement with the property is consistent with a joint tenancy.

The fact that we find dispositive is that the proceeds from the note were deposited into a joint account in both brothers' names, indicating that Hal's interest in the property was a present interest. Furthermore, the fact that Mike apparently had exclusive use of the funds for two years prior to the establishment of the escrow account and the fact that it appears Mike alone claimed the benefits on his tax return forms for four years, do not convince us that the deed was not valid. Joint tenants may contract with each other concerning the use of the common property as for the exclusive use of the property by one of them, or the division of income from the property. *Miller v. Riegler, supra*, quoting 48 C.J.S. *Joint Tenancy* § 10.

The appellant next argues that the deed was not delivered. A valid delivery includes an intention to pass title immediately and loss of dominion by the grantor over the deed. *Adams v. Dopieralla*, 272 Ark. 30, 611 S.W.2d 750 (1981).

Generally, for delivery to be effective, the instrument must pass beyond the grantor's dominion and control. *Broomfield*, v. *Broomfield*, 242 Ark. 355, 413 S.W.2d 657 (1967). We think that in cases where the grantor creates a joint tenancy in himself and another person, it is unreasonable to require that the grantor give up all control. *See Miller* v. *Riegler, supra.*

■ In the present case the deed contained a notation indicating that the deed was to be delivered to Hal and listed Hal's address. The deed was placed in Hal's safe, to which, testimony revealed, both brothers had access. There is a strong presumption in favor of a deed when it is shown to have been executed by a competent person not acting under undue influence, if the document remains in the hands of the named grantee. *Woodruff* v. *Miller*, 212 Ark. 91, 205 S.W.2d 181 (1947). Under the facts of this case, the presumption is not rebutted merely because both brothers had access to the safe and Mike continued to exert some individual control over the property.

■ The appellant's final argument concerns whether Mike's creation of the joint tenancy four days prior to his marriage to Josephine operated to defraud her of her dower rights. The appellant had to show by clear and convincing evidence that Mike had conveyed the property for the purpose of depriving his intended wife of the legal benefits of the marriage. *Wilhite* v. *Wilhite*, 242 Ark. 705, 415 S.W.2d 44 (1967).

■ On our review of chancery cases, we will not set aside a chancellor's findings of fact unless they are clearly erroneous or against the preponderance of the evidence. *Cuzick* v. *Lesly*, 16 Ark. App. 237, 700 S.W.2d 63 (1985). At the time of the marriage, Mike was 75 and Josephine was 78. Both had been married before. Josephine's house was sold, and the proceeds from the sale, along with a $500.00 contribution from Mike, were used to buy certificates of deposit in the names of Josephine and her children. They then purchased a residence for themselves. Lois Buchanan testified that Mike told Josephine that "what was his was his and what was hers was hers." Prior to the marriage, Mike told Roy Hummel, his nephew, that he had taken care of everything and "what's mine is mine and what's hers is hers."

■ Although we agree with the chancellor that this evidence will not support a finding that Mike and Josephine had a

prenuptial agreement, we do think it will support a finding that both Mike and Josephine intended for their respective families to benefit from their separate property. The evidence simply will not support a finding that Mike intended to defraud Josephine of her dower rights when he created the joint tenancy.

Affirmed.

COULSON and JENNINGS, JJ., agree.