Robert L. BARKER *v.* C. Dean NELSON, Robert A. Barker, II, Sherry Barker, Daniel Thomas Barker and Pamela Barker

91-60                                                  812 S.W.2d 477

Supreme Court of Arkansas
Opinion delivered July 1, 1991

*Arnold, Hamilton & Streetman*, by: *Thomas S. Streetman*, for appellant.

*Griffin, Rainwater, & Draper, P.A.*, by: *Gary M. Draper*, for appellees.

ROBERT L. BROWN, Justice. Appellant Robert L. Barker appeals an order of the chancery court finding a valid conveyance of certain land by him and his former wife, Helen Barker, to their sons, Robert A. Barker, II and Daniel Thomas Barker, and to their wives by means of a 1982 warranty deed.

The facts leading up to the execution of the deed and the aftermath are widely disputed. According to the sons, Robert and Daniel, they were called to their parents' home with their wives on the night of September 1, 1982, and presented with a warranty deed executed by Barker and his wife deeding them four lots in the city of Crossett, with the parents retaining a life estate in all four lots. One of the lots described in the warranty deed had previously been sold to Daniel in 1979. Another lot was the parent's homestead. At the meeting, according to the sons' testimony, the original deed was passed around the table and shown to them, and each son paid consideration of $1.00 for the deed. At the conclusion of the meeting, Barker and his wife retained possession of the deed.

The catalyst for the meeting and the grant, according to Robert, was an investigation by a government agency into the fact that Barker was drawing two disability checks from the Civil Service and the Marine Corps. According to Robert, Barker was concerned that he might have to pay some of the disability money back to the government, and because of that he decided to deed his real property to his sons. Barker denied that the disability checks prompted the execution of the deed and further denied that the September 1, 1982 meeting with his sons even took place. He testified, rather, that the deed was made because Helen Barker was in poor health, and they both wanted to avoid losing the land to the state if he or his wife had to enter a nursing home.

Within one or two days after the meeting, Robert and Daniel testified, each received a photostatic copy of the warranty deed from their parents—Daniel got his from his mother and Robert

got his from his father. Barker denies that he gave either son a copy of the deed. According to both sons, their mother urged them to record their copies of the deed. The original deed stayed in the possession of Barker and his wife, and they placed it in their safe. It was not recorded. Three years later, in 1985, one of the lots described in the deed was sold by Barker and his wife to third parties, apparently with the knowledge of Robert and Daniel. From 1982 forward Barker paid real estate taxes on the property, continued to reside on one of the lots, and received rental income from the lease of two of the lots.

Helen Barker died on November 13, 1988. In March or April 1989, Barker met with his sons and their wives at a restaurant and informed them that he might remarry. Angered by this news, Robert and Daniel recorded one of the copies of the warranty deed in the Ashley County Circuit Clerk's office on May 12, 1989. Thereafter, Barker did remarry. The original deed remains in Barker's possession and was never recorded.

On July 12, 1990, Barker filed suit against his sons, their wives, and the circuit clerk (collectively, the appellees) to cancel and expunge the recorded deed on grounds that it was a copy without original signatures and further to void the 1982 conveyance for failure to deliver. The chancellor found that the warranty deed was delivered and was a valid conveyance of real property, but that the deed, as a photocopy, should not have been recorded and must be expunged. In his incorporated findings, the chancellor further agreed with the sons that Barker and his wife intended to deliver the property to them in order to remove it from the possibility of loss to the federal government. The chancellor, however, refused to void the conveyance, and Barker has appealed on that issue.

Barker's sole argument is that no delivery of the original deed to the sons transpired and, accordingly, no conveyance of title occurred. In advancing this argument, Barker contends that there was no intent to deliver as evidenced by the fact that one lot included in the 1982 grant was conveyed to a third party in 1985, without objection from the sons. As additional evidence of no intent, Barker points to the prior grant of another lot to his son Daniel in 1979. Finally, he argues that he and his former wife continued to reside on one of the remaining lots and to pay the real

estate taxes on that property.

We begin by acknowledging that a delivered deed passes title as between the parties even though it has not been recorded. *See Ferguson* v. *Haynes*, 224 Ark. 342, 273 S.W.2d 23 (1954). Ordinarily, for there to be a delivery of a deed we have said that the grantor must intend to pass title immediately, and the grantor must lose dominion and control over the deed. *See e.g., Crowder* v. *Crowder*, 303 Ark. 562, 798 S.W.2d 425 (1990); *Broomfield* v. *Broomfield*, 242 Ark. 355, 413 S.W.2d 657 (1967); *Smith* v. *Van Dusen*, 235 Ark. 79, 357 S.W.2d 22 (1962). In the *Broomfield* and *Smith* decisions, we further held that the intention to convey title must be manifested by what is said and done by the grantor and grantee. This statement partially echoes past authority where we stated that the question of delivery of a deed is one of intention of the grantor, as manifested by his acts or words or both. *See Cribbs* v. *Walker*, 74 Ark. 104 (1905), *citing* 9 Am. & Eng. Enc. Law p. 154.

Where the deed includes the reservation of a life estate in the grantor, however, the requirements of delivery are different. *See Grimmett* v. *Estate of Beasley*, 29 Ark. App. 88, 777 S.W.2d 588 (1989); *Cribbs* v. *Walker*. In *Cribbs* we reversed the chancellor's decision and held that when a husband deeded property to his wife and showed her the deed, but reserved a life estate in himself and kept the deed in his personal safe, there was an effective delivery. To the same effect, the Arkansas Court of Appeals reversed the chancellor in *Grimmett* v. *Estate of Beasley* on similar facts and held that when the grantor reserved a life estate, delivery of a deed to the grantor's brother (the grantee) occurred when she showed the instrument to her brother, even though she kept the deed in her possession, used the property, and paid real estate taxes on the property. Also, in *Grimmett* the grantee had copies of the deed in his possession with the original signature of the grantor. Again, as was the case in *Cribbs* v. *Walker*, the distinguishing factor in the *Grimmett* case was the reservation of a life estate in the grantor. Since actual possession of the property by the grantee would not occur until the grantor's death, physical control of the deed by the grantee was not required in either case.

We hold that the distinction made in *Cribbs* and *Beasley* is a legitimate one and that when a life estate is retained

by the grantor under the deed and the grantee is shown the original deed by the grantor, possession of the original deed instrument need not be transferred to the grantee in order to effect a delivery.

Moreover, the chancellor in the case before us made precise findings of fact, among which was the critical finding that in 1982 Barker intended to convey the remainder interest in his property to his sons, while reserving a life estate in himself and his wife. A second critical finding was that Barker delivered the deed to his sons at his home on September 1, 1982, when he passed the original deed around the table and showed it to them. The chancellor further gave credence to the testimony of the sons that the reason for the conveyance was Barker's fear of losing the property to the federal government. Lastly, the chancellor, by not referencing the transaction in his findings, apparently discounted the effect of Barker's 1985 transfer of one of the lots to a third party. In addition, though the chancellor did not make a specific finding on this point, we do note that the sons had a photostatic copy of the deed in their possession which they used for recordation in 1989. They testified that the copy came from their parents and that their mother urged them to record their copies.

In sum, the chancellor heard testimony from multiple witnesses and had full opportunity to observe the witnesses and evaluate their credibility. He found that the evidence preponderated in favor of the appellees. We are unable, under these circumstances, to say that the chancellor's findings were clearly erroneous. *See* Ark. R. Civ. P. 52(a).

We, therefore, affirm.