Sandra BURMEISTER and Keith Hutchinson *v.*
Maxyne RICHMAN

CA 01-1336                                        76 S.W.3d 912

Court of Appeals of Arkansas
Division II
Opinion delivered June 5, 2002

*Matthews, Campbell, Rhoads, McClure, Thompson & Fryauf, P.A.*, by: *Mark T. Fryauf*, for appellants.

*Boyer, Schrantz, Rhoads & Teague, PLC*, by: *Ronald L. Boyer*, for appellees.

J OHN F. STROUD, JR., Chief Judge. In this case from Benton County, appellee petitioned the trial court to set aside a deed that she had executed to herself and appellants as joint tenants with the right of survivorship. She claimed that the deed should be set aside because appellants repudiated an agreement that, upon her death, they would sell the property and give the proceeds to the Humane Society. The court granted appellee's petition, finding that, because she had continued to live on the property and pay taxes thereon after executing the deed, the deed was never delivered to appellants. We reverse and remand.

Appellee, who is in her eighties, owns real property in Bella Vista, Arkansas upon which her home is located. She has no

spouse, children, or close relatives. She acquired the property as the result of her brother's death in 1988. In 1990, her long-time friend Oscar Shaffer rented the downstairs portion of her house and occupied it. Soon thereafter, she deeded the property to herself and Oscar as joint tenants with the right of survivorship. When Oscar died in 1996, appellee regained her status as sole owner of the house.

In 1997, appellee became close friends with appellants Burmeister and Hutchinson. Hutchinson was only six years younger than appellee, but appellee referred to the couple as her "kids." The three enjoyed a close social relationship, going to lunch and dinner and exchanging gifts. Appellants sometimes took appellee grocery shopping, and Hutchinson occasionally performed odd jobs at appellee's home, for which he was paid with gifts of nice clothing. Appellee also gave appellants a set of house keys and a garage door opener, and she put their names on her credit card and bank account.

On June 12, 1997, appellee executed a deed that conveyed her lot in Bella Vista to "SANDRA BURMEISTER, KEITH HUTCHINSON, and MAXYNE L. RICHMAN, as joint tenants with right of survivorship and not as tenants in common. . . ." The deed contained no conditions or other limiting language.

The circumstances leading to the execution of the deed are in dispute. According to appellee, she spoke with an attorney friend after Oscar Shaffer's death and learned that, if she died without close relatives, her property might escheat to the State. She testified that she communicated her concern to appellants as follows:

> I told [Hutchinson] . . . I did not want the State of Arkansas to have it, and I said, "If you would put your name on the deed with me," I said, "then I would have to ask you to be sure the home is sold and that the money is turned over to the humane society."

According to appellee, Hutchinson responded that this was "no problem." Appellee also testified that Burmeister was present during this exchange, but said nothing.

Appellee hired attorney David George, who prepared the abovementioned deed and also prepared, at her request, a will appointing appellants as executors of her estate and bequeathing the bulk of her estate to them. The will, like the deed, contained no restrictions or limiting language even though, according to appellee, she told George that she wanted her home sold and the proceeds given to the Humane Society.

Appellants testified that they offered to become executors of appellee's estate after Oscar Shaffer died. According to them, they learned for the first time at the attorney's office that appellee planned to include them on her deed and make them beneficiaries in her will. They testified that no mention was made of selling the house and giving the proceeds to the Humane Society.

Following the execution of the deed, the attorney recorded it and sent it to appellee, who kept it in a strong box in her home. Appellee continued to live in the home alone, pay taxes on it, pay for repairs and improvements, and otherwise conduct herself as if she were sole owner. Appellants paid only the property owners' assessment fees, which allowed them to play golf at Bella Vista.

Following execution of the deed, the parties continued to enjoy a good relationship, but that came to an end in August of 2000, when appellee hired a couple named Blevins to place decorative rock in her backyard. After the job had been completed, appellants criticized the type of rock that appellee had chosen and the cost of the rock. According to appellee, she became angry and told appellants that she would "turn [the house] over" to Mr. and Mrs. Blevins. She testified that, thereafter, appellants came to her house, showed her a copy of her will, and claimed to own her house and everything in it. Appellee told them to take back all their gifts and later asked them to deed their interest in the property back to her. They refused, and appellee filed suit, asking that the deed be canceled or, in the alternative, that a constructive trust be imposed.

The remaining testimony at trial was given by appellee's hairdresser, Sheila Harp; appellee's close friend, Helen Ulland; and attorney David George. Harp testified that, after the argument between appellee and appellants occurred, appellants called her to

discuss the situation. According to Harp, appellants said that, if appellee "didn't straighten out," they would purchase her one-third share and kick her out of the house. This was denied by Burmeister. Ulland testified that appellee called her when she returned from the attorney's office on June 12, 1997, and told her that she had arranged for appellants to sell the house and give the proceeds to the Humane Society. Attorney David George, who had practiced for many years in the areas of real estate and estate planning, testified in a limited fashion because he had represented both appellants and appellee, and he did not want to violate the attorney-client privilege. He said that appellee read over the deed and the will and that she understood them before she signed them.

Following the trial, the judge ruled from the bench as follows:

> I think it is clear . . . that neither [appellee] nor [appellants] believed that [appellants] had any ownership interest in this property. A presumption does arise when a deed is signed and recorded that it has been transferred, but that presumption I believe has been amply rebutted here, and I think the clear and convincing evidence shows that there has been no delivery of title. So I will set aside the deed. I think it's of no. force and effect. I think the property is and always has remained [appellee's] property.

In her written order, the judge stated:

> [Appellee] has carried her burden of proof and is entitled to judgment. Although a presumption of a valid delivery of a deed attaches when the deed is recorded, this presumption can be rebutted by evidence showing the grantor continued to use and pay taxes on the property and did not intend to pass title to the property. That was the proof in this case.

We do not interpret the judge's rulings to contain a finding one way or the other regarding the credibility of appellee's contention that appellants promised to turn the house over to the Humane Society upon her death. Instead, we read her remarks from the bench and the language contained in her order to say that her finding of non-delivery rests on the fact that appellee continued to live in and pay taxes on the home after the deed was executed.

Therefore, our review of the judge's findings will be limited to whether her decision on that basis was clearly erroneous.

A deed is inoperative unless there has been delivery to the grantee, and an essential element of a valid delivery is the grantor's intention to pass title immediately, thus giving up dominion and control of the property. *Johnson v. Ramsey*, 307 Ark. 4, 817 S.W.2d 200 (1991). Presumption of delivery attaches when a deed is recorded, but that presumption may be rebutted by evidence that the grantor did not intend to give up dominion over her property. *Id.* Such rebuttal must be established by clear and convincing evidence. *See generally Corzine v. Forsythe*, 263 Ark. 161, 563 S.W.2d 439 (1978); *McCord v. Robinson*, 226 Ark. 350, 289 S.W.2d 893 (1956); *Seboly v. Seboly*, 208 Ark. 1008, 188 S.W.2d 625 (1945). However, despite this heightened burden of proof at trial, our standard of review on appeal is not whether we are persuaded that there is clear and convincing evidence to support the judge's finding, but whether we can say that the judge's finding that the fact was proved by clear and convincing evidence is clearly erroneous. *See Nichols v. Wray*, 325 Ark. 326, 925 S.W.2d 785 (1996). A finding is clearly erroneous when, although there is evidence to support it, we are left, on reviewing the entire evidence, with the firm conviction that a mistake has been committed. *See id.*

A grantor's continued use of property and payment of taxes and maintenance costs thereon are relevant considerations tending to rebut the presumption that a deed has been delivered. *See In re Estate of Tucker*, 46 Ark. App. 322, 881 S.W.2d 226 (1994). However, the significance of a grantor's continued dominion over property wanes when the grantor retains an interest in the property rather than completely divesting himself or herself of ownership. In *First National Bank & Trust Co. v. Estate of Hummel*, 25 Ark. App. 313, 758 S.W.2d 418 (1988), Mike Hummel conveyed property to himself and his brother as joint tenants with the right of survivorship. Later, Mike's estate tried to set the deed aside on the grounds that Mike had kept control over the deeded property. We were not persuaded that Mike's continued dominion over the property defeated his brother's interest, noting that, "in cases where the grantor creates a joint tenancy in himself

and another person, it is unreasonable to require that the grantor give up all control." *Id.* at 317, 758 S.W.2d at 420. This same line of reasoning has also been applied where a grantor reserved a life estate in himself. *See Barker v. Nelson,* 306 Ark. 204, 812 S.W.2d 477 (1991) (holding that where life estate retained by grantor, the deed did not need to be transferred to grantee to effect delivery); *Estate of Sabbs v. Cole,* 57 Ark. App. 179, 944 S.W.2d 123 (1997) (holding that where deed reserved life estate, grantor's retention of possession and control of the property is not inconsistent with delivery).

The trial judge in this case found that the presumption of delivery was rebutted by appellee's continued use of and payment of taxes on the property. However, appellee's conduct was not inconsistent with delivery of the deed because, as a joint tenant, she retained an interest in the deeded property. Thus, her continued dominion is not sufficient to rebut the presumption of delivery created when the deed was recorded. We therefore conclude that the trial judge's finding of non-delivery, based on appellee's continued dominion over the property, was clearly erroneous.

Appellants also challenged the trial court's imposition of a constructive trust, but our review of the court's order does not reveal that a constructive trust was imposed. We therefore reverse and remand on the basis discussed herein.

Reversed and remanded.

PITTMAN and ROAF, JJ., agree.