2011 Ark. App. 294

**FIRST SECURITY BANK, Successor Trustee of the Patricia Geels Revocable Trust Dated December 5, 2006, Appellant**

v.

**Steven GEELS, Jr., and Linda Geels, Appellees.**

**No. CA 10–969.**

Court of Appeals of Arkansas.

April 20, 2011.

George R. Rhoads and Sarah Lorimer Waddoups, Rogers, for appellant.

Timothy Penhallegon, Springdale, for appellee.

RAYMOND R. ABRAMSON, Judge.

This appeal involves a dispute over the title to 486 acres in Crawford County, Arkansas. The property in dispute was purchased in October 2002 for $916,000 using funds from a family painting business. The business was operated loosely as a subchapter S-corporation with money frequently being distributed to family members without documentation or tax reporting.[1] Appellee, Steven Geels, Jr. (Jr.), owned 25% of the business; his father, Steven Geels, Sr. (Sr.),[2] owned 51%; and

---

1. Steven Geels, Jr., testified that they were pretty "loosey-goosey" about getting money out of the corporation and that many personal expenses (including expenses for his sister) were paid for with corporate funds.

2. Sr.'s first name is also spelled "Stephen" at various places in the record.

his mother, Patricia Geels (Patricia), owned 24%.

At the time of the purchase, the business had just completed a $1.5 million project for St. Edwards Hospital in Fort Smith. Although Sr. retained his 51% ownership in the business, he was semi-retired at the time, and the majority of the work was being performed by Jr. Patricia does not appear to have played an active role in the company. When the 486–acre parcel in Crawford County was purchased, title to it was placed in the names of Jr. and his wife, Linda (Linda). This was not unusual as the parties had never titled land in the corporate name. Instead, the land was generally purchased jointly with all four names being placed on the deed. However, land had also been purchased previously in Sr.'s and Patricia's names alone, and on at least one other occasion, title was placed solely in Jr.'s and Linda's names.

The purchase and sale agreement for this particular parcel of property was executed on October 24, 2002, and the warranty deed was recorded less than one week later on October 31, 2002, in Jr. and Linda's names only. Jr. asserts that Sr. approved the transaction but that Patricia became upset that Jr. had used business funds to purchase the property without including her name on the deed. Patricia then threatened to divorce Sr. if the deed was not changed to include her name.

As a result of the disagreement, in early December 2002, Sr. asked Jr. and Linda to execute a deed placing the property in all four names. Jr. and Linda complied and signed the deed at the family's place of business and in the presence of Sr. The deed conveyed title from Jr. and Linda, husband and wife, to "Steven Geels, Jr. and Linda Geels, husband and wife, and Steven Geels, Sr., and Pat Geels, husband and wife." Sr. left that meeting with the original, signed deed in his possession. The deed, however, had not been notarized. Moseley Abstract subsequently returned the original deed to the business office noting that it could not be recorded without a notarized acknowledgment. Jr. placed the unacknowledged deed in his personal files at the office.

On December 28, 2002, Patricia had a photocopy of the previously signed deed notarized. Sheryl White, Patricia's daughter and Jr.'s sister, notarized the document because she was familiar with and recognized Jr.'s and Linda's signatures. Patricia then filed the warranty deed with the Crawford County Circuit Clerk on May 15, 2003. The tax records from that date forward listed all four names as owners of record for the property, and the mailing address was changed to the corporate mailing address. Property taxes on the parcel were paid with corporate funds, although apparently all property taxes, regardless of ownership, had always been paid by the corporation.

On November 23, 2005, Sr. died. There was no probate of his interest in the painting business.

In November 2006, Patricia, along with Jr., met with an estate planning attorney. It was at this meeting that Jr. discovered that the deed, in fact, had been recorded and that the property was held jointly. Patricia later quitclaimed her interest in the property to the Patricia Geels Revocable Trust dated December 5, 2006 (Trust). Sometime thereafter, Patricia died.

On October 28, 2008, Jr. and Linda filed suit against the Trust to have the deed set aside. After reviewing the exhibits and hearing testimony from Jr., Linda, and White, the trial court set aside the deed. In doing so, the trial court found that (1) "the signed, unnotarized deed was not a binding document to transfer title to the

land because the signing of the deed was subject to a condition subsequent"; and (2) "the statute of limitations was tolled by the fraudulent action of Patricia Geels by her taking a copy of the above invalid deed, and having the copy notarized and the copy filed at the Circuit Clerk's Office in Crawford County, Arkansas." The Court further found that "Patricia Geels did not notify the plaintiffs of her claim for three and one-half years after filing the copy deed."

The Trust, through its successor trustee First Security Bank, appeals the trial court's order setting aside the deed, claiming that the trial court erred in finding that the deed was invalid; that a verbal condition subsequent attached to the deed; that there was fraudulent concealment; and that the statute of limitations did not bar Jr. and Linda's claims to set aside the deed.

We first address the validity of the deed. The Trust argues that the deed to the property was sufficient to transfer title because (1) Jr. and Linda intended to convey the property and (2) there was actual delivery of the deed to Sr. The Trust asserts that the fact that the deed was initially unacknowledged and unrecorded is of no consequence because an undated, unacknowledged, and unrecorded deed still effectively passes title between the parties as long as there was actual delivery and an intent to convey.

■ A deed is inoperative unless there has been delivery to the grantee, and an essential element of a valid delivery is the grantor's intention to pass title immediately, thus giving up dominion and control of the property. *Johnson v. Ramsey,* 307 Ark. 4, 817 S.W.2d 200 (1991). The

questions of intent by the grantor and the delivery of the deed are questions of fact. *Hunter v. Hunter,* 198 Ark. 8, 127 S.W.2d 249 (1939). Presumption of delivery attaches when a deed is recorded, but that presumption may be rebutted by evidence that the grantor did not intend to give up dominion over her property. *Johnson, supra.* Such rebuttal must be established by clear and convincing evidence. *See generally, Corzine v. Forsythe,* 263 Ark. 161, 563 S.W.2d 439 (1978); *McCord v. Robinson,* 226 Ark. 350, 289 S.W.2d 893 (1956); *Seboly v. Seboly,* 208 Ark. 1008, 188 S.W.2d 625 (1945).

■ However, despite this heightened burden of proof at trial, our standard of review on appeal is not whether we are persuaded that there is clear and convincing evidence to support the judge's finding, but whether we can say that the judge's finding that the fact was proved by clear and convincing evidence is clearly erroneous. *See Nichols v. Wray,* 325 Ark. 326, 925 S.W.2d 785 (1996). A finding is clearly erroneous when, although there is evidence to support it, we are left, on reviewing the entire evidence, with the firm conviction that a mistake has been committed. *See id.*

■ Here, Jr. admitted that he and his wife signed the deed transferring a half-ownership interest in the property to his parents because they wanted to appease his mother, who had threatened to divorce his father over the title dispute to this property. However, Jr. claimed, and the trial court found, that the transfer was conditioned on the parties coming to a subsequent agreement on compensation prior to closing.[3] Nothing in the deed

**3.** The Trust argued that any verbal condition associated with the deed would be barred by the statute of frauds and that the disputed deed did not meet any of the requirements to

establish a valid condition subsequent. However, it is clear from our reading of the record that the trial court was merely asserting, albeit inartfully, that the deed was invalid be-

reflects this intention. The deed does not contain any language or condition limiting its effectiveness or validity. Rather, the deed, on its face, simply transfers title. The deed was signed and taken from the room by Sr. after it was signed. There is no evidence in the record that Jr. or Linda protested Sr.'s taking the deed at that time or requested its return. The deed was then given to the abstract company, which returned the deed because it did not contain a signed acknowledgment. The deed was returned to the corporation (of which Sr. and Patricia were still 75% owners) for acknowledgment, but was filed away by Jr. Jr. testified that the deed was sent to the abstract company in anticipation of "closing" the deal after the subject of compensation was settled and that Sr. told him not to file the deed when it was returned. This self-serving testimony is troubling since neither Sr. nor Patricia is alive to rebut his claims. Moreover, if there were to be a subsequent closing, an acknowledgment could have easily been prepared at closing and there would have been no need to return the deed for acknowledgment. Jr. also appears to argue that the fact that his mother visited the property only once and had no active role in the operation of the farm supports his position that no transfer occurred. A grantor's continued use of property and payment of taxes and maintenance costs thereon are relevant considerations tending to rebut the presumption that a deed has been delivered. *See In re Estate of Tucker*, 46 Ark.App. 322, 881 S.W.2d 226 (1994). However, the significance of a grantor's continued dominion over property wanes when the grantor retains an interest in the property rather than completely divesting himself of ownership. *Burmeister v. Richman*, 78 Ark.App. 1, 76 S.W.3d 912 (2002). Thus, since Jr. and Linda retained a one-half interest in the property, assuming the transfer was valid, the fact that they took a more active role in the use of the property is not a significant factor in determining whether a transfer occurred.

Based on a review of the record, we hold that a valid transfer was made at the time Jr. and Linda signed and delivered the deed to Sr. Jr. admitted that he intended to transfer the property to appease his mother and that his father took possession of the deed after signing. Thus, there was a present intent to convey title, and there was an actual delivery of the deed. That the deed was unacknowledged and unrecorded does not affect its validity. *See Grimmett v. Estate of Beasley*, 29 Ark.App. 88, 777 S.W.2d 588 (1989) (holding that even a deed that is undated and unacknowledged effectively passes title, as between the parties, from the date of delivery); *Barker v. Nelson*, 306 Ark. 204, 812 S.W.2d 477 (1991) (holding that a delivered deed passes title as between the parties even though it has not been recorded).

Because we find that the deed was valid as to the parties when signed and delivered to Sr. in December 2002, we need not reach the parties' arguments with respect to the statute of limitations or whether it was tolled by fraudulent concealment. This is so because, even if we were to find that the photocopied deed was improperly acknowledged and recorded, the improperly acknowledged and recorded deed had no effect on either Jr.'s or

cause there was no present intent to transfer the property. In other words, the trial court found that Jr. and Linda only intended the transfer to be effective once the parties agreed upon compensation—a condition to be satisfied subsequent to the signing—not that there was some "condition subsequent," as that term of art is normally used in association with a deed. Thus, the Trust's arguments to this effect are inapposite.

Linda's rights to the property, as a valid transfer had already occurred. A wrong, without any accompanying harm, is not actionable. Thus, as the original unacknowledged and unrecorded deed effectuated a valid transfer, there was no cause of action for fraud.

Based on the foregoing, the order is reversed, and the cause is remanded to the trial court to enter judgment that the unacknowledged deed effectively passed title to the property in accordance with this opinion.

PITTMAN and MARTIN, JJ., agree.