**In re HARVEST COMMUNITIES OF HOUSTON, INC., d/b/a Harvest Communities of Hondo.**

No. 04–02–00410–CV.

Court of Appeals of Texas, San Antonio.

July 31, 2002.

---

David J. Coates, Jay D. Hirsch, Hirsch Robinson, P.C., Houston, Robert E. Valdez, Robert E. Valdez, P.C., San Antonio, for Appellant.

Christopher A. Payne, Beth S. Janicek, Maloney & Maloney, P.C., San Antonio, for Appellee.

Sitting: PHIL HARDBERGER, Chief Justice, ALMA L. LÓPEZ, Justice, PAUL W. GREEN, Justice.

Opinion by PHIL HARDBERGER, Chief Justice.

Harvest Communities of Houston, Inc. d/b/a Harvest Communities of Hondo ("Harvest") seeks mandamus relief from an order striking its expert Dr. Larry Watson from testifying.[1] We do not condone the behavior of Harvest's counsel, Jay Hirsch. We also agree with the trial court that Hirsch's actions are sanctionable, but we conditionally grant the writ because striking Dr. Watson's testimony was a death penalty sanction, and the trial court made no effort to remedy the situation with a lesser sanction.

## BACKGROUND

Joey Mennella is mentally retarded and is a patient at Harvest. The Mennellas sued Harvest in 1999, claiming that Harvest was negligent in connection with its care of Joey when he suffered a ruptured appendix. The lawsuit was stayed due to Harvest's bankruptcy proceedings. After the stay was lifted, a scheduling order was entered in December of 2001. Harvest timely designated two medical experts— Dr. Silverman and Dr. Watson.

Harvest's attorneys failed to respond to a request by the Mennellas' attorneys for deposition dates. On April 23, 2002, the Mennellas sent a letter to Harvest's attorney noting that in his letter, Harvest's attorney stated that Dr. Silverman would not be available until 1:00 p.m. on May 9. The Mennellas' attorneys stated that Dr. Silverman's deposition would be taken at 1:00 p.m. on May 9, and Dr. Watson's deposition would be taken on May 10 at 10:00 a.m. On April 16, the Mennellas' attorneys sent deposition notices to Harvest's attorney, stating "We have contacted your office on numerous occasions asking for dates for these depositions but have been unsuccessful. Therefore, we are proceeding with noticing these depositions."

On the morning of May 9, as the Mennellas' attorneys were traveling to Houston for Dr. Silverman's deposition, they were notified that Dr. Watson would not be available on May 10 due to a conflict. There is some confusion in the record about Dr. Watson's problem, but Dr. Watson states in an affidavit that he was obligated to attend an emergency meeting as Department Chairman and Surgery Section Chief concerning a physician on May 10 at 1:00 p.m., and he might not have time to finish the deposition.

When counsel arrived for Dr. Silverman's deposition, Hirsch confirmed that Dr. Watson would not be available for his

---

1. The order also strikes Dr. Louis Silverman as an expert witness; however, Harvest does not seek relief from that portion of the trial court's order in its petition.

deposition the following day. Hirsch offered an alternative schedule and offered to pay for any expenses incurred by the Mennellas' attorneys due to the rescheduling. Hirsch denies that his production of Dr. Watson was conditioned on the production of plaintiff's experts, and the reporter's record from Dr. Silverman's deposition reflects that in response to whether Hirsch was conditioning the tender of Dr. Watson, Hirsch stated, "No. You know, you can get him deposed, and if there's any expense because it's undue [sic] to you, we'll see that you get compensated for it."

During the deposition of Dr. Silverman, counsel became involved in a heated exchange. After the exchange, the deposition was prematurely terminated.

The discovery deadline was May 17, 2002. A motion for continuance was denied. On May 17, the trial court conducted a hearing on the Mennellas' motion to strike Dr. Silverman and Dr. Watson as a sanction for discovery abuse. The trial court granted the motion. Harvest filed a motion to reconsider with regard to Dr. Watson. The motion to reconsider was denied. Harvest seeks mandamus relief only as to the portion of the trial court's order striking Dr. Watson.

## DISCUSSION

■■■ Rule 215 of the Texas Rules of Civil Procedure provides for the imposition of sanctions in the event of an abuse of discovery. TEX.R. CIV. P. 215. The rule leaves the choice of sanctions to the sound discretion of the trial court, subject only to the sanctions being "just." *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). Whether sanctions are just is determined by a two-part test. *Id.* First, there must be a direct relationship between the offensive conduct and the sanction imposed, which requires a

trial court to at least attempt to determine whether the offensive conduct is attributable to counsel only, or to the party only, or to both. *Id.* Second, the sanction must not be excessive. *Id.*

The trial court found that the conduct of Harvest's attorney, Jay Hirsch, in the deposition of Harvest's expert, Dr. Silverman, was "egregious and merit[ed] the imposition of sanctions." There is evidence in our record to support the trial court's finding.

■■ Mennellas' counsel, who was taking the deposition, was repeatedly interrupted by long, argumentative objections by Hirsch, some of which lasted several pages. These objections were in violation of Rule 199.5(e) which limits objections to questions during the oral deposition to "Objection, leading" and "Objection, form." *See* TEX.R. CIV. P. 199.5(e). The purpose of the Rule was to prevent the kind of obstructive behavior that was exhibited here and to save substantive complaints for a later hearing before the trial court. Reminders by Mennellas' counsel to Hirsch regarding the applicable Rules of Civil Procedure and efforts to ensure that Hirsch complied with the rules were given short shrift. In a typical exchange during the deposition, Mennellas' counsel complained of Hirsch's speech-making and reminded Hirsch, "You're entitled to make the objection as to form—and then you are to stop." Counsel's reminder was a fair restatement of Rule 199.5(e), but Hirsch's response was:, "You're not going to tell me a thing. You just keep your mouth shut. We're through." Shortly thereafter, the deposition terminated when Hirsch said, "... seek your sanctions. It's over."

Hirsch was also not shy to put on the record what he thought about the ability of Mennellas' counsel to ask questions. Hirsch characterized the questions as "in-

credible," "nonsense," "an incredible waste of time," "preposterous," and "absurd." Before prematurely terminating Dr. Silverman's deposition, Hirsch gave his parting opinion, stating that Mennellas' counsel had asked, "... the most preposterous questions I've seen in nearly—in 39 years of practicing law, I've never seen anybody like you." Such comments clearly are not in keeping with a lawyer's responsibilities under the Texas Disciplinary Rules of Professional Conduct which requires a lawyer to demonstrate respect for the legal system and for those who serve it, including other lawyers. TEX. DISCIPLINARY R. PROF'L CONDUCT preamble ¶ 4, *reprinted in* TEX. GOV'T CODE ANN., tit. 2, subtit. G app. A (Vernon 1998).

The termination of the deposition by Hirsch came at a difficult time. The Discovery Control Plan that governed the case provided for the conclusion of discovery on May 17, only eight days after the abrupt termination of Dr. Silverman's deposition. The Mennellas did not do any better with their efforts to depose Harvest's other expert, Dr. Watson. That deposition had been scheduled the morning after Dr. Silverman's deposition and was documented by a formal notice and a confirming phone call. Nevertheless, the Mennellas' attorneys were informed on their drive to Houston from San Antonio to take Dr. Silverman's deposition, that Dr. Watson's deposition was going to be unexpectedly cancelled because of a meeting the doctor needed to attend. The trial court found that the Mennellas "repeatedly requested the depositions of the Defendant's two designated experts" and the "Defendants had never provided dates for the deposition." The record supports this finding. Ultimately, eight days before discovery ended, the Mennellas had only been able to take one partial deposition of the two experts designated by Harvest.

Harvest offered to reschedule the deposition of Dr. Watson, but after having been so roughly treated during Dr. Silverman's deposition, counsel for the Mennellas elected to return to San Antonio and seek the sanctions that they had been invited to seek by Hirsch.

■ In its motion requesting the trial court to reconsider the sanctions, Harvest did not challenge the striking of Dr. Silverman. Harvest takes the position that by limiting its motion to reconsider to the striking of Dr. Watson, the discovery abuse that occurred with respect to and during Dr. Silverman's deposition no longer has any relevance. The history of Dr. Silverman's deposition, however, could be considered by the trial court in its overall consideration of the appropriate sanction and can be considered by this court in our review of that sanction. Witnesses are designated and dedesignated for many reasons. The selection of witnesses is, indeed, as Harvest conceded, "a tactical decision." Perhaps the concession with regard to Dr. Silverman was self-penance for Hirsch's behavior in Dr. Silverman's deposition, but perhaps Harvest's attorneys simply believed that Dr. Silverman would not be an effective witness. The trial judge has the authority to look at the entire course of discovery, and not simply what the party's wish to present in isolation for inspection.

■ The trial court was well within his discretion to assess sanctions in this case, including harsh sanctions. Such attorney misbehavior demeans the entire profession, and should be punished. This does not end the discussion though because the sanctions must be just and the punishment must fit the crime. *TransAmerican*, 811 S.W.2d at 917.

*TransAmerican* teaches us that the concept of "just," among other things means "whether the offensive conduct is attribut-

able to counsel only, or to the party only, or to both," and that "just sanctions must not be excessive" 811 S.W.2d at 917. Striking all of the expert witnesses in a medical malpractice case is a serious matter.

The Mennellas contend that the trial court's order striking Dr. Watson is not a death penalty sanction because Harvest had designated 12 other possible experts. Harvest's second supplemental designation of experts does list 12 additional "treating physicians and health care providers who can be expected to give expert testimony at trial" and the designation does state that Harvest "anticipates that expert testimony may be elicited from some of these treating health care providers regarding standard of care issues, causation issues, and damages issues to the extent the individual provider is qualified to render same." However, these treating physicians and health care providers are not experts retained by Harvest to provide an opinion as indicated by the fact that Harvest lists its "independently retained experts" in a separate section of its designation.

We agree with Harvest that there is a difference between a retained expert and an expert who is a fact witness. As defense counsel explained, "They are non-retained experts, which means they will not do a history, they will not be in position to study the records and give a picture to anyone what the chronology was in the events that take place so that they can give an opinion, much more than what they just did. [The] [o]nly thing they are going to testify about is what they saw and did." Unlike these fact witnesses, Dr. Watson was retained to review the entirety of the medical records and was "expected to testify regarding the medical probability that the Decedent's appendix ruptured after he was no longer under the Defendant's

care." At the time Dr. Watson's testimony was stricken, Harvest had no other expert that it could rely on to controvert the causation element of the Mennellas' claim.

The Mennellas' argument is an interesting one and has some is required, *Revco, D.S., Inc. v. Cooper*, 873 S.W.2d 391, 396 (Tex.App.-El Paso 1994, no writ), we find that striking Dr. Watson's testimony does amount to a death penalty sanction. Under these circumstances, the party involved is the one who ultimately suffers. The party is denied its day in court. While Hirsch's offensive behavior is obvious in this case, there is no evidence that Harvest has been guilty of anything greater than hiring an attorney who offends.

■■■ "[A] party should not be punished for counsel's conduct in which it is not implicated apart from having entrusted to counsel its legal representation." *TransAmerican*, 811 S.W.2d at 917. Except under the most extreme circumstances, a party should not be denied its Constitutional right to a trial by jury simply because its attorney misbehaved and ignored the Rules of Civil Procedure. Lesser sanctions were possible in this case, and we appreciate the candor evidenced by the Mennellas' attorney in oral argument in agreeing that the record does not reflect that the trial court considered a lesser sanction.

■■■ A great deal of information was relayed to the panel during oral argument that is outside the record that was before the trial court at the time the trial court made its ruling, including depositions that the parties agreed to take after the trial court's ruling and testimony by the witnesses in those depositions. However, a judgment cannot rest upon what may or may not occur after its rendition. *Taylor v. Hicks*, 691 S.W.2d 839, 841 (Tex.App.-Fort Worth 1985, no writ); *Beavers v. Beavers*, 675 S.W.2d 296, 300 (Tex.App.-

Dallas 1984, no writ). A judgment must take its validity from the action of the court at the time it is rendered and not from what persons may or may not do after the court has rendered the judgment. *Taylor*, 691 S.W.2d at 841. We believe a similar rule must be applied in considering whether the trial court's order was an abuse of discretion in this case. We can only consider the record that was before the trial court at the time of the hearing in determining whether the trial court's ruling was in accordance with the guiding rules and principles set forth in *Trans-American*. Based on that record, we conclude that the trial court's order striking Dr. Watson's testimony was an improper death penalty sanction because the trial court failed to consider lesser sanctions.

■ Our holding should not be read as condoning Hirsch's antics. The discovery abuse in this case deserves sanctions; however, we simply hold that before a death penalty sanction can be levied, the trial court must "consider the availability of less stringent sanctions and whether such lesser sanctions would fully promote compliance." *TransAmerican*, 811 S.W.2d at 917. We also note that our holding is necessarily limited to the record presented to the trial court at the sanctions hearing. On remand to the trial court, the trial court is not similarly constrained and will be able to consider an appropriate sanction based on the entirety of the record, including the events that unfolded since the last sanctions hearing.

### CONCLUSION

Because the trial court failed to consider lesser sanctions before imposing a death penalty sanction, we conditionally grant the writ of mandamus. The writ will only issue if Judge Gabriel fails to withdraw his order striking Dr. Watson as an expert within ten days from the date of our opin-

ion and order. After withdrawing his order, Judge Gabriel may reconsider an appropriate sanction for the discovery abuse that occurred based on the entirety of the record presented to him at the subsequent hearing.