Shirley M. JARAMILLO  *v.*  Leonard E. ADAMS, Sr.

CA 07-59                                                    268 S.W.3d 351

Court of Appeals of Arkansas
Opinion delivered November 14, 2007

*Judith Rebecca Pratt Hass*, for appellant.

*Len W. Bradley*, for appellee.

KAREN R. BAKER, Judge. Appellant, Shirley M. Jaramillo, appeals from a decision by the Johnson County Circuit Court finding that a deed from Grace Adams to Shirley Jaramillo was null and void. Ms. Jaramillo has three arguments on appeal. First, she argues that the trial court's decision to cancel the deed must be reversed because the court erred as a matter of law when it found that the case filed in 2004 was not barred by the statute of limitations where the deed was notarized, executed, and filed of record in 1984 and the grantee (through whom the appellee claims his right to the lands) died in 1992. Furthermore, tolling of the statute will not be found in the case of a recorded deed where the appellee was aware of his mother's death for some twelve years before maintaining this action. Second, she argues that the trial court's decision to cancel the deed must be reversed because the court erred as a matter of law when it found that this case, which was filed in 2004, was not subject to the defense of laches where the deed was notarized, executed and filed of record in 1984 and the grantee (through whom the appellee claims his right to the lands) died in 1992. Third, she argues that the trial court's decision to cancel the deed must be reversed because the court abused its discretion and committed prejudicial error when it refused to admit into evidence a will executed by the mother of the parties and a statement executed by a deceased brother of the parties, finding the evidence was excluded as hearsay. We find merit in appellant's first two arguments and reverse and dismiss.

Grace Adams and James H. Adams acquired an interest as tenants by the entirety in real property located in Johnson County, Arkansas, by warranty deed dated and recorded of record on December 4, 1974. The warranty deed conveyed approximately thirty-nine acres of land. Grace Adams had four children, Shirley M. Jaramillo (appellant), Leonard E. Adams, Sr. (appellee), Denver Adams, and Marjorie Hudgens. On November 19, 1984, Grace Adams executed a warranty deed conveying the thirty-nine acres in Johnson County to Shirley and reserving a life estate in herself. The warranty deed was recorded on November 28, 1984. Subsequently, on May 30, 1988, Shirley quitclaimed the thirty-nine acres to Barry Watkins (an attorney), who in return, quitclaimed the same real property to Shirley and her husband Lotario O. Jaramillo for the purpose of creating a tenancy by the entirety. Grace Adams died intestate on May 21, 1992. On February 20, 2004, Shirley's sibling, Leonard Adams, filed a complaint in Johnson County Circuit Court alleging that Grace Adams's signature on the deed conveying the thirty-nine acres to Shirley was a

forgery; therefore, Grace Adams died while owning a fee simple title to the thirty-nine acres and the title passed by operation of law to all four of Grace Adams's children in equal shares as tenants in common.

A hearing was held on March 24, 2006, and resumed on September 20, 2006. Shirley testified first at the hearing. She explained that both her mother and father began living with her in 1980. Her father lived with her until his death in 1985, and her mother continued to live with her until her death in 1992. Shirley testified that during that time, she cared for her parents and provided all the physical and financial assistance that her parents needed. In 1984, she and her husband took her mother to attorney Barry Watkins's office to have a deed prepared conveying the thirty-nine acres to Shirley and retaining a life estate in her mother. She was present when the deed was signed, and Mr. Watkins and his secretary and notary, Janie Barnett, were also present. Mr. Watkins recorded the deed on November 28, 1984. In 2002, a lawsuit was filed in Sebastian County to determine entitlement to the proceeds of the mineral interests and royalties on the thirty-nine acres. At the time, Shirley claimed that she was the sole owner of the thirty-nine acres, and Leonard disputed the claim that she was the sole owner.[1] Ultimately, on July 23, 2003, the judge in the Sebastian County lawsuit entered an order distributing the payment of royalties equally among Grace Adams's four children. Shirley testified that she did not dispute the court's distribution of the payments because the lawsuit concerned payments of royalties from 1979 until 1994. Because her mother retained a life estate and died in 1992, she would have been entitled only to the proceeds of the last two years of that time period.

Shirley testified that when she became aware of the fact that her brother Leonard and her sister Marjorie believed the 1984 deed was a forgery, she hired Linda Taylor, a handwriting analyst, to examine Grace Adams's signature on the deed. Ms. Taylor's July 12, 2004 report demonstrated that she was unable to confirm that Grace Adams was the person that signed the deed. However, Shirley testified that she was one hundred percent certain that her mother signed the deed, and she signed it in the presence of Mr. Watkins, Ms. Barnett (the notary), and Shirley. Mr. Watkins was

---

[1] Shirley's husband died in 1990. Because she and her husband owned the property as tenants by the entirety, Shirley became the owner of the property upon his death.

available and testified at the hearing; however, although every attempt was made to find Janie Barnett, Shirley was unable to locate her.

Shirley also testified that her mother executed a will, drafted by attorney Barry Watkins, which was discovered after Grace Adams's death in some of her personal papers. The will was never probated because Shirley testified that she did not become aware of the fact that a will was executed until approximately a year before the hearing in this case. Shirley attempted to introduce the will at the hearing, but the judge ruled that the will was inadmissible. She stated that the signature on the will belonged to her mother, and that Mr. Watkins and Janie Barnett were witnesses to the will. Shirley also attempted to introduce a document executed by her brother, Denver Adams, before his death. It was signed by Denver, his wife, and Shirley. However, the trial court determined that the document was hearsay and inadmissible "[a]lthough it [did] point out that on the defense of laches the number of witnesses we[']re seeing [were] not available anymore. But, I'm going to sustain Mr. Bradley's objection."

Mr. Watkins testified that when he was a practicing attorney[2] he did real estate work, such as preparing deeds, contracts for sale, mortgages, and notes. Although not absolutely certain, he stated that he remembered preparing the deed signed by Grace Adams. He also remembered meeting with her on two occasions. At the first meeting, which took place in his office, he remembered discussing Grace Adams's desire, except for retaining a life estate in the thirty-nine acres, to "convey everything to Shirley." He wanted to make sure she understood the implications of conveying all of her property to only one of her four children. On the second occasion when Grace Adams was present at his office, she signed the deed. He thought he was present on this second occasion and stated "I have no reason to doubt that it is indeed her signature." He explained that it was standard procedure in his office for his secretary to type the deed and to notarize only the documents that she witnessed the client signing. At the time the deed was prepared, Janie Barnett, his secretary, signed and notarized the deed. After working for him approximately eight or nine years, Janie left

---

[2] Mr. Watkins surrendered his law license after numerous complaints were filed against him alleging that he failed to accurately communicate with his clients about the status of their cases.

his office, and began working at the Ozark Guidance Center. Mr. Watkins stated that he had not had any contact with Janie since she obtained other employment.

Mr. Watkins also testified that an associate of his law firm prepared a Last Will and Testament for Grace Adams. On October 2, 1984, he "witnessed Ms. Adams signature on this [w]ill, and [he knew] it to be her signature." Mr. Watkins signed the document as a witness. There were also two other witnesses to the will; however, they were both employees that, at the time, worked in a nearby office, and there had been no communication with either witness since the will was signed.

Leonard Adams also testified at the hearing. The following excerpts from his testimony demonstrate the confusing and inherently contradictory nature of his statements. Leonard testified that he became concerned about the property back in 1976 or 1977, and after several conversations with Shirley, he decided to check the deed to the thirty-nine acres. He stated that, "[w]hen I found the deeds I knew they were not my mother's signature." However, even after seeing the deeds, he did not share any of his concerns with Shirley. Leonard testified that "I think it was about two years before I filed the lawsuit that I went to the Courthouse and got copies of the deeds. . ." However, he also stated that "I would say that it was about five or six years after 1984 that I found the deed dated November 19, 1984 and I found it in the Clerk's office at that same courthouse." Leonard also testified that he "found the deeds after the funeral," and that it had been close to ten years since he "went to check out the deeds at the courthouse." Leonard stated that, "I found the deed but I had to have it analyzed before I would believe it. That wasn't 10 years ago though, it hasn't been quite that long." Leonard then testified that, "It's been over 10 years ago when I went and checked out the deed records." He stated that Shirley told him that "[the property] belongs to all of us, nothing has changed." However, Leonard stated that the three deeds that he found showed otherwise. Then, he testified that he found the deeds "about 5 or 6 years after the first deed was filed. When I found these deeds in the record my mother was not still alive. The deed was made in 1984 and it was filed of record then. It was 5 or 6 years after it was filed that I found it in the record. It was quite awhile after Mother's death that I found the deed."

Leonard further testified that after his mother's death, he and siblings Denver and Marjorie discussed what they would do with

the thiry-nine acres. He did not discuss it with Shirley because Shirley claimed to own it all. At the time he found the deed, which he again testified was ten years ago, Shirley was claiming that she owned the land. He also restated that he concluded that the moment he first discovered the deed, he knew it did not contain his mother's signature. To confirm that it was not his mother's signature, he hired B.P.I. Laboratories in Texas to analyze the deed. The letter Leonard received from B.P.I. Laboratories, dated May 9, 2003, stated that, in the opinion of the examiner, the signature on the deed appeared to be traced from the original 1974 warranty deed and was, therefore, not a genuine signature. At this point in his testimony, Leonard stated that he thought he found the deeds two years before receiving the 2003 letter from B.P.I. Laboratories.

During Leonard's testimony he was also shown a copy of the Last Will and Testament of Grace Adams. When he looked at the signature, Leonard stated that while the signature matched the one on the deed, neither signature belonged to his mother. At this point, Shirley's counsel attempted to proffer the will for the record. The trial court allowed introduction of the signature of Grace Adams and the signature of one witness, Mr. Watkins. However, the trial court did not allow the contents of the will to be introduced.

After hearing the testimony of several witnesses, the trial court took the case under advisement. On October 13, 2006, the trial court entered a judgment in the case, finding that based on the expert opinion of Ms. Linda Taylor, which the court found to be unbiased, credible, and more convincing, the deed did not contain the signature of Grace Adams and the deed was declared canceled and null and void. The trial court also determined that the defenses of the statute of limitations and laches had no applicability to this case. From that decision, comes this appeal.

In bench trials such as this, the standard of review on appeal is not whether there is substantial evidence to support the finding of the court, but whether the judge's findings were clearly erroneous or clearly against the preponderance of the evidence. Ark. R. Civ. P. 52(a); *Reding v. Wagner*, 350 Ark. 322, 86 S.W.3d 386 (2002); *Shelter Mut. Ins. Co. v. Kennedy*, 347 Ark. 184, 60 S.W.3d 458 (2001). A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with a firm conviction that a mistake has been committed. *Flagstar Bank v. Gibbins*, 367 Ark. 225, 238 S.W.3d 912 (2006)

(citing *Sharp v. State,* 350 Ark. 529, 88 S.W.3d 348 (2002)). Disputed facts and determinations of credibility are within the province of the fact-finder. *Id.* (citing *Sharp, supra; Pre-Paid Solutions, Inc. v. City of Little Rock,* 343 Ark. 317, 34 S.W.3d 360 (2001)). However, a trial court's conclusions of law are given no deference on appeal. *McWhorter v. McWhorter,* 351 Ark. 622, 97 S.W.3d 408 (2003) (citing *City of Lowell v. M & N Mobile Home Park Inc.,* 323 Ark. 332, 916 S.W.2d 95 (1996)); *Millwood Sanitation & Park Co., Inc. v. Mattingly,* 100 Ark. App. 56, 264 S.W.3d 566 (2007).

Shirley argues that Leonard's claims are barred because he did not file his claim until twenty years after the deed was executed and recorded and twelve years after the death of their mother. Arkansas Code Annotated section 18-61-101 states that "[n]o person or his or her heirs shall have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments after seven (7) years once his or her right to commence, have, or maintain the suit shall have come, fallen, or accrued." Additionally, Shirley argues that the trial court erred as a matter of law in finding Leonard's cause of action was not barred by the defense of laches. Both rulings were premised on the trial court's determination that the deed was a forgery. Because Shirley's first two arguments on appeal both turn on the question of when Leonard's right to maintain the suit accrued, we will address them together.

The doctrine of laches is based on a number of equitable principles that are premised on some detrimental change in position made in reliance upon the action or inaction of the other party. *Self v. Self,* 319 Ark. 632, 893 S.W.2d 775 (1995). Laches or estoppel does not arise merely by delay, but by delay that works a disadvantage to another. *Ueltzen v. Roe,* 242 Ark. 17, 411 S.W.2d 894 (1967). So long as the parties are in the same condition, it matters little whether one presses a right promptly or slowly within limits allowed by law. *Id.* But where one, knowing his rights, takes no steps to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state if the right be enforced, delay becomes inequitable and operates to estop the asserted right. *Id.* This disadvantage may come from loss of evidence, change of title, intervention of equities, the making of substantial improvements to the land, and other causes, for where the court sees negligence on one side and injury therefrom on the other, it is a ground for denial of relief. *Id.*

Put in other terms, estoppel is merely the manner, in courts of equity, and sometimes even in courts of law, where when one party, or one group of parties sit idly by and do not speak when, in good conscience, they should speak, they will not later be heard to speak when they should in good conscience, remain silent. *Id.*

■ Because of Leonard's delay in taking action, Shirley's position has detrimentally changed. When an affirmative defense is raised, the defendant has the burden of proof. *See generally Marx v. Huron Little Rock*, 88 Ark. App. 284, 198 S.W.3d 127 (2004) (stating that because comparative fault is an affirmative defense, the burden is on the defendant to prove that the plaintiff was at fault); *Beeson v. Beeson*, 11 Ark. App. 79, 667 S.W.2d 368 (1984) (stating that when the statute of limitations has been pled, the one relying upon it has the burden of proving those facts giving rise to it). Here, in attempting to meet her burden, Shirley was forced to depend on documents that were determined by the court to be unreliable because at the time the hearing was held, as noted by the trial court, witnesses were unavailable to testify. Shirley also attempted to rely upon a signed statement from her now deceased brother, Denver Adams, that the signature on the deed belonged to her mother. However, the court determined that the signed statement was hearsay and inadmissible. Also due to Leonard's delay, Shirley was unable to locate Janie Barnett, the secretary and notary from Mr. Watkins's law office. She testified that every attempt was made to locate Janie, but because Janie had only worked for Mr. Watkins for eight or nine years, and Mr. Watkins had no contact with her after she left his employ, her attempts were unsuccessful. Certainly Shirley's position had changed to her detriment in reliance on Leonard's inaction.

Based on Leonard's testimony, we find that it was impossible to determine, or for Shirley to prove, exactly *when* he discovered the deed. The *only* definite fact that the trial court could have derived from Leonard's testimony was that when he first discovered the deed, he knew that the signature on the deed did not belong to his mother. Likewise, we know that after his mother's death in 1992, Leonard and siblings Denver and Marjorie discussed what they would do with his mother's land, but did not discuss it with Shirley because she claimed to own it all. A statute of limitations begins to run only when a right accrues. *See Marshall v. Gadberry*, 303 Ark. 534, 535, 798 S.W.2d 99, 100 (1990). When the question of laches is in issue, the plaintiff is chargeable with

such knowledge as he might have obtained upon inquiry, provided the facts already known to him were such as to put the duty of inquiry upon a man of ordinary intelligence. *See Mitchell v. Hammons, M.D.*, 31 Ark. App. 180, 792 S.W.2d 333 (1990). Although we do not determine when Leonard discovered the deed, we do find that any reasonable person should have inquired as to the ownership of the property at the time of Grace Adams's death in 1992, when Shirley continued in possession of the thirty-nine acres, claiming sole ownership. Any reasonable inquiry would have led to the discovery of the deed, which was filed for record in 1984, and any potential forgery would have become apparent at that time. However, it was not until 2004 that Leonard filed the complaint in this case alleging that the signature on the deed was a forgery.

▪ We hold that at least by the time of Grace Adams's death, Leonard's rights had accrued and the seven-year statute of limitations began to run. Thus, the trial court erred as a matter of law in finding that because of his determination that the deed was forged, the defenses of statute of limitations and laches could not apply. Here, the question concerning the applicability of the defenses raised by Shirley was not whether the deed was forged; but rather, whether Leonard still had the right to question the authenticity of the signature on the deed twenty years after it was executed and recorded and twelve years after the death of Grace Adams. We hold that he did not.

Shirley's final argument is that the trial court abused its discretion and committed prejudicial error when it excluded as hearsay a will executed by the mother of the parties and a statement executed by a deceased brother of the parties. Because of our conclusion as to Shirley's first two arguments, we do not address this issue.

Reversed and dismissed.

MARSHALL and MILLER, JJ., agree.