2013 Ark. App. 54

**Charles D. WASHINGTON and Shirley Washington, Appellants**

v.

**Andrew WASHINGTON et al., Appellees.**

**No. CA 12–325.**

Court of Appeals of Arkansas.

Jan. 30, 2013.

Wilber Law Firm, by: Norman C. Wilber, Mountain Home, for appellants.

Jeremy B. Lowrey and L. Gray Dellinger, Melbourne, for appellees.

LARRY D. VAUGHT, Judge.

This is the second time that appellants Shirley and Charles Washington have appealed from a decree of partition entered by the Izard County Circuit Court. We dismissed the first appeal for lack of a final order. *Washington v. Washington*, 2010 Ark. App. 16, 2010 WL 58909. This appeal challenges the circuit court's findings as to the validity of a deed, whether there had been adverse possession of the property, and whether the doctrines of laches, waiver, and estoppel applied, as well as the court's ruling on a hearsay objection. We affirm.

This is a dispute over the ownership of 360 acres located in Izard County. Charles Washington and appellees Andrew Washington, Alice Dockins, Joe Washington, Georgia Washington Norris, and George Washington Jr. are siblings.

Their parents, Annie and George Washington Sr., conveyed the property to Charles in February 1959, and, in return, Charles conveyed the property back to his parents in April 1959. The deed to Charles was recorded on April 16, 1959. The deed from Charles back to his parents was dated April 17, 1959. The deed was given to Georgia Norris in 1973, some two years before the father's death, but the deed was not recorded until 2003, after the deaths of both parents.

On September 18, 2007, appellees filed suit seeking to partition 360 acres of land located in Izard County.[1] In their response and counterclaim for quiet title, appellants asserted that Charles held record title to the property. In the alternative, appellants contended that they had acquired the property by adverse possession. Appellants also sought to set aside the deed back from Charles to his parents on the basis that the deed was only intended as security for Charles's agreement to take care of his siblings. Further, in the event that the court ruled in favor of partition, appellants sought compensation for the taxes they paid and for improvements they made to the property.

After a hearing, the circuit court issued a letter opinion dated December 2, 2008. The court rejected the claim that the property was conveyed to Charles in exchange for his taking care of his siblings, finding that the only thing Charles had done toward that end was to facilitate a loan for one of his siblings. The court further found that although Charles had paid real-estate taxes, there was a presumption that such payments were for the benefit of all the tenants, his siblings. Accordingly, the court ruled that the parties owned the property as tenants in common and or-

1. The petition also included property located in Mount Olive, but this property is not at issue in the appeal.

dered the property to be sold at public auction. The parties were to divide the proceeds of the sale according to their respective interests and Charles was to "recover his *pro rata* part of the taxes he has paid over the years and any other provable amounts." The court's written order incorporating its findings was entered on January 7, 2009.[2] The circuit court subsequently entered an order specifying that Charles was to receive approximately $42,000 for property taxes and other expenses on the property.

On November 30, 2011, the circuit court entered a "Final Order" that included a Rule 54(b) certificate. A "Nunc Pro Tunc Order" was entered on December 28, 2011, identical to the earlier "Final Order." This appeal followed.

For reversal, appellants argue that the circuit court erred by (1) determining that the deed back from Charles to his parents was a valid conveyance with the immediate intent to deliver the property; (2) denying appellants' claim for adverse possession; (3) failing to find that appellees' claims were barred by laches, waiver, or estoppel; and (4) allowing appellees to testify as to hearsay statements made by their parents concerning the parents' intent regarding the deeds to and from Charles.

■ The standard of review on appeal from a bench trial is whether the circuit court's findings were clearly erroneous or clearly against the preponderance of the evidence. *McNeely v. Bone*, 287 Ark. 339, 698 S.W.2d 512 (1985). Disputed facts and determinations of credibility are within the province of the fact-finder. *Jaramillo v. Adams*, 100 Ark.App. 335, 268 S.W.3d 351 (2007). A circuit court's conclusions of law, however, are given no deference on appeal. *Id.* at 341, 268 S.W.3d at 356.

■ Appellants' first point is that the circuit court erred in finding that the deed back from Charles to his parents was valid. They contend that there was no delivery of the deed because neither Charles nor his parents intended to immediately vest title in the parents. Instead, they assert that the deed from Charles to his parents was merely intended as security for Charles's agreement to take care of his siblings. In support of this contention, appellants rely on testimony of Charles and Georgia Norris that their father directed the deed not be recorded as long as Charles took care of his siblings. There was also testimony that the father carried the deed with him in his overalls until he gave it to Norris in 1973.

■ Possession of a deed by the grantee is prima facie evidence of its delivery. *Harvey v. Ledbetter*, 219 Ark. 27, 240 S.W.2d 18 (1951). Only clear and convincing evidence can overcome that presumption. *Id.* at 34, 240 S.W.2d at 21. The fact that the parents never recorded the deed is not dispositive because, as between the parties to the deed, a delivered deed passes title even though the deed is not recorded. *Barker v. Nelson*, 306 Ark. 204, 812 S.W.2d 477 (1991); *Williams v. Kitchell*, 212 Ark. 114, 204 S.W.2d 873 (1947). Here, there was a manual delivery of the deed to the parents, raising a presumption of delivery. Even if Charles and his parents had an agreement that the deed would not be recorded as long as Charles took care of his siblings, it would not prevent the passage of title because the deed was a present conveyance. *Ferguson v. Haynes*, 224 Ark. 342, 273 S.W.2d 23

---

**2.** Circuit Judge John Norman Harkey heard the matter as the trial judge and made the decision in the matter by letter opinion. The final order was not prepared and sent to the court for signature until after Judge John Norman Harkey had retired. The order was ultimately signed by his successor, Judge Adam Harkey.

(1954); Lindsey v. Christian, 222 Ark. 169, 257 S.W.2d 935 (1953). The deed from Charles to his parents does not contain any conditions or mention any agreement not to record the deed. Moreover, Joseph Washington denied that there was any conversation during a family meeting in February 1959 concerning whether Charles would get the property in exchange for taking care of the siblings; instead, he explained that the property was conveyed in order for the parents to obtain welfare benefits.[3]

■ Whether a deed has been delivered is generally a question of fact involving intentions manifested by acts or words. *First Sec. Bank v. Geels*, 2011 Ark. App. 294, 383 S.W.3d 437. The circuit court heard testimony from multiple witnesses and had full opportunity to observe the witnesses and evaluate their credibility. The court found that the evidence preponderated in favor of the appellees, stating in its letter opinion that Charles "never did anything for his siblings for a forty year period other than facilitate the borrowing of $500.00 from the bank for a sister (which was repaid)." Under these circumstances, we cannot say that the court's findings were clearly erroneous.

■ For their second point, appellants argue that the circuit court erred in not finding that they own the property by adverse possession. The circuit court found that Charles's actions fell far short of establishing title by adverse possession.

■ In order to prove ownership of land by adverse possession, the party claiming possession must show continuous possession of the property for seven years. *Robertson v. Lees*, 87 Ark.App. 172, 183, 189 S.W.3d 463, 471 (2004). In addition, that possession must be actual, open, notorious, continuous, hostile, exclusive, and accompanied by an intent to hold against the true owner.[4] *Id.* at 184, 189 S.W.3d at 471. Also, because the use of land by family members is presumed to be permissive, stronger evidence of adverse possession is required in cases involving family. *Id.* at 184, 189 S.W.3d at 471. If the original use and possession of the land is permissive, it cannot become adverse until notice of the hostility of the possessor's holding has been brought home to the owner by actual notice or by a holding so open and notorious as to raise a presumption of notice equivalent to actual notice; the evidence of adverse holding when the original entry is by permission must be very clear. *Rickett v. O'Dell*, 86 Ark.App. 86, 91, 160 S.W.3d 717, 720 (2004).

■ After Charles executed the deed back to his parents, his continued possession of the property was presumed to be subordinate to the legal title held by his grantee because he is estopped by his deed from claiming that his holding is adverse. *Bellamy v. Shryock*, 211 Ark. 116, 199 S.W.2d 580 (1947); *Davis v. Burford*, 197 Ark. 965, 125 S.W.2d 789 (1939). It is true that this presumption fades away with the lapse of time where his occupancy

---

3. Joseph's testimony is somewhat contradictory. He also testified that he did not know any of the circumstances of the conveyance from the parents to Charles. He also said that "Charles took care of the kids because that was dad's will."

4. The Arkansas General Assembly enacted certain statutory requirements for proof of adverse possession in Act 776 of 1995, now codified at Arkansas Code Annotated section 18–11–106 (Supp.2011). We have held that the amendment to section 18–11–106 did not apply to landowners whose claims of adverse possession had vested prior to the enactment of the amendment. *Schrader v. Schrader*, 81 Ark.App. 343, 101 S.W.3d 873 (2003). Charles's claim could have vested long before the 1995 amendments.

is unexplained. *Davis,* 197 Ark. at 971, 125 S.W.2d at 791–92. Here, the occupancy is explained by Charles's claim that he retained title because of an alleged agreement between Charles and his parents that he would take care of his siblings.

Appellants contend that notice of Charles's adverse claim was given shortly after the property was conveyed to Charles in the form of a letter written by Georgia Norris in March 1963, asking her father if the property was still in Charles's name and advising her father that Charles was attempting to sell the property. While the letter does mention Charles trying to sell the property, the letter is more of Norris informing her father that someone was inquiring about the timber on the property and asking her father to consider selling the timber and use the money to improve the property. Moreover, in his testimony, Charles did not discuss whether he had attempted to sell the property around the time of Norris's letter. He did say that his siblings wanted to divide the property immediately after the death of their father in 1975. However, their mother was still alive at that time, and there was no discussion as to any actions by her.

In support of his claim for adverse possession, Charles testified to the following acts of dominion and control over the property, stating that he: had the property surveyed; bush hogged the property; cut timber; built and repaired roads; dug a well; paid the taxes between 1959 and 2003; and mortgaged the property on several occasions for the benefit of his siblings. Shirley Washington, Charles's wife, corroborated these events and testified to other actions. None of these acts, however, are necessarily inconsistent with Charles being in possession of the property with his parents' permission. Charles testified that he gave some of the money from a 1960 timber sale to his father,

which could be construed as a recognition of the father's title. The only other timber sale Charles testified to occurred in 2001.

Charles relies on the case of *Martin v. Certain Lands Lying in Izard County,* 9 Ark.App. 181, 656 S.W.2d 713 (1983), to support his position that he obtained the property by adverse possession. Although there are some similarities between the present case and *Martin, Martin* does not require reversal. First, it is important to keep in mind that Charles had conveyed the property back to his parents, albeit by a deed not recorded for over forty years, while the co-tenants in *Martin* had inherited the property. This fact gives rise to the presumption that Charles's possession was subordinate to his parents' title.

Second, it is not clear exactly when Charles's possession became hostile so as to start the running of the statute of limitations. Charles testified that he has owned the property since 1959. The actions Charles testified about are consistent with his being the sole owner of the property, as well as his being simply one of several co-tenants. Charles confronts the problem of when his adverse possession accrued by arguing that the adverse possession began in 1991, when he refused Georgia Norris's letter demanding that the title be placed in the names of all of the siblings. The only other clear and unequivocal action by Charles to show that he was claiming sole ownership of the property was restricting appellees' access in 2006.

This court recently addressed such a situation in the following language:

Additional factors come into play when one co-tenant asserts adverse possession against the others, because the possession of one tenant-in-common is the possession of all. Because possession by a co-tenant is not ordinarily

adverse to other co-tenants, each having an equal right to possession, a co-tenant must give actual notice to other co-tenants that his possession is adverse to their interests or commit sufficient acts of hostility so that their knowledge of his adverse claim may be presumed. The statutory period of time for an adverse-possession claim does not begin to run until such knowledge has been brought home to the other co-tenants. There is no hard-and-fast rule by which the sufficiency of an adverse claim may be determined; however, the court considers factors such as the relationship of the parties, their reasonable access to the property, kinship, and innumerable other factors to determine if non-possessory co-tenants have been given sufficient warning that the status of a co-tenant in possession has shifted from mutuality to hostility. When there is a family relation between co-tenants, stronger evidence of adverse possession is required.

*Sutton v. Gardner,* 2011 Ark. App. 737, at 8–9, 387 S.W.3d 185, 192 (citations omitted). The circuit court found that Charles's actions were far short of those necessary to acquire title by adverse possession. Although not specifically stated, this involved a credibility determination. After considering the presumption that Charles's possession was subordinate to his grantee's title and the presumption that the possession of one co-tenant is the possession of all co-tenants, we cannot say that the circuit court's finding that Charles had failed to prove his claim of adverse possession was clearly erroneous.

In their third point, appellants argue that the circuit court erred in not applying the doctrines of laches, waiver, or estoppel in order to find that they owned the property. Although appellants pled the doctrines of laches, waiver, and estop-

pel in their response to the partition petition, the circuit court never specifically ruled on these affirmative defenses in either its letter opinion or in the January 7, 2009 decree of partition. It is an appellant's responsibility to obtain a ruling in order to preserve an issue for appeal. *Miller v. Ark. Dep't of Fin. & Admin.,* 2012 Ark. 165, 401 S.W.3d 466. The failure to obtain a ruling on an argument precludes appellate review because there is no order of a lower court on the issue for this court to review on appeal. *Id.* at 7, 401 S.W.3d at 470 (citing *Pro–Comp Mgmt., Inc. v. R.K. Enters., LLC,* 372 Ark. 190, 272 S.W.3d 91 (2008)). Because the circuit court did not specifically rule on this issue, we are precluded from addressing the merits of this argument on appeal.

Finally, appellants take issue with the circuit court allowing appellees to testify to, over appellants' continuing hearsay objection, discussions with their father concerning his conveyance of the property to Charles. This court reviews evidentiary errors under an abuse-of-discretion standard. *Hunt v. Perry,* 357 Ark. 224, 162 S.W.3d 891 (2004).

Appellee Georgia Norris testified that the property was conveyed to Charles so that their parents could draw welfare benefits. Her brother Joseph Washington and her sister Alice Dockins also testified as to this fact. Appellants did not object until Norris repeated her assertion on cross-examination. After the circuit court overruled the objection, appellants were granted a continuing objection, which they later renewed.

We are not convinced that the hearsay rule has any application in the present case. The testimony from Georgia Norris and Joseph Washington was more their conclusion as to the basis for their parents' actions rather than to any specific statement made by the parents. More-

over, at the time of the conveyances between Charles and his parents in 1959, Medicare and Medicaid had not been created, nor had the parents entered a nursing home. Assuming arguendo that the statements were hearsay, the objection came too late. Our courts have frequently held that a contemporaneous objection must be made to the circuit court before we will review an alleged error on appeal. *Jones v. State*, 340 Ark. 390, 10 S.W.3d 449 (2000) (holding that the defendant's argument was barred because he did not object to the introduction of certain character evidence until after two witnesses had already so testified). Moreover, there is no prejudice in admitting evidence that is merely cumulative or repetitious of other evidence admitted without objection. *JAG Consulting v. Eubanks*, 77 Ark.App. 232, 72 S.W.3d 549 (2002). Appellants further argue that the circuit court allowed this inadmissible hearsay to be the basis for its conclusion that the deed from Charles back to his parents was valid. Absent a proper objection, hearsay, if relevant, is competent and entitled to consideration by the circuit court and by a reviewing court in support of its findings. *Rinke v. Shackleford*, 248 Ark. 941, 455 S.W.2d 83 (1970).

Because the circuit court did not err in ordering the partition and sale of the property, we affirm. However, the circuit court's order in this case lacks a specific description of the property. A final order in a partition case must describe the property with sufficient specificity that it may be identified solely by reference to the decree. *Greenway Land Co. v. Hinchey*, 2010 Ark.App. 330; *see also Petrus v. Nature Conservancy*, 330 Ark. 722, 957 S.W.2d 688 (1997). In *Jennings v. Burford*, 60 Ark.App. 27, 35, 958 S.W.2d 12, 16 (1997), we noted that the decree there lacked a specific description on the boundary line in question, but we noted that the line described in that case

was specifically described as "the meandering fence 'reflected by the Askew survey.'" We held that the lack of specificity in the order was not reversible error, but was a mere omission or oversight that could be corrected pursuant to then Rule 60(a) of the Arkansas Rules of Civil Procedure. Accordingly, we granted leave to the lower court to amend the decree by adding a more specific description of the boundary line between the parties' land. We recently did the same in *Adams v. Atkins*, 97 Ark.App. 328, 249 S.W.3d 166 (2007), when the order identified the boundary line as reflected in the Higby survey as the true and correct boundary line between the properties in question. In the present case, the order also lacks a specific description of the property, but the order clearly references the January 2009 decree that does contain a specific description. As we did in *Jennings* and *Adams*, we grant leave to the circuit court to amend the decree by adding a more specific description of the property.

Affirmed and remanded with instructions.

GLOVER and WHITEAKER, JJ., agree.