Cite as 2022 Ark. App. 206

# ARKANSAS COURT OF APPEALS
## DIVISION III
### No. CV-21-243

| | |
|---|---|
| KIMBERLY STONE GRIFFITH<br>APPELLANT<br><br>V.<br><br>DESIDERIO JUAREZ, PULASKI BANK & TRUST CO., M. SHANE BROSH, LEE ANN BROSH, VERONICA KAYE ALLEN, RICHARD N. ALLEN, AND ESTATE OF CHARLOTTE JEANNE STONE<br>APPELLEES | Opinion Delivered May 11, 2022<br><br>APPEAL FROM THE PULASKI COUNTY CIRCUIT COURT, SIXTH DIVISION<br>[NO. 60CV-20-4048]<br><br>HONORABLE TIMOTHY DAVIS FOX, JUDGE<br><br><br>AFFIRMED |

**BART F. VIRDEN, Judge**

Kimberly Stone Griffith appeals the circuit court's dismissal with prejudice of her petition to quiet title as to Desiderio Juarez and Veronica and Richard Allen. We affirm.

I. *Relevant Facts*

On July 23, 2020, Kimberly Stone Griffith filed a petition to determine heirship and quiet title, naming Veronica Allen, Richard Allen, Estate of Charlotte Stone, Shane Brosh, Lee Ann Brosh, Desiderio Juarez, and Quicken Loans, Inc., as respondents.[1] In the petition, Kimberly recounted that on February 27, 1975, her grandparents, Celestia and OC Stone,

---

[1]The petition was amended on August 20, 2020, to remove Quicken Loans, Inc., as a respondent and to add Pulaski Bank and Trust Company, among other minor changes.

delivered and recorded a quitclaim deed conveying an undivided, one-half interest in approximately two acres of commercial property located on Highway 10 to both her father, Darrell Stone, and Celestia Stone (as trustee for Darrell's brother, Mark Stone.) On January 8, 1979, Celestia recorded a quitclaim deed conveying Mark's one-half interest to Darrell. Darrell died intestate in 1981, and his estate was not probated. He was survived by his wife, Veronica, and two daughters, Kimberly (age seven) and Charlotte (age twelve). Three years later, Veronica married Richard Allen (Allens). In 1988, the Allens decided to obtain a bank loan for $35,000, intending to secure the loan with a mortgage on the property; however, the Allens discovered they had no interest in the property as shown by Pulaski County real estate records. On January 10, 1989, Veronica, Richard, and Charlotte executed a warranty deed purporting to convey the property to Veronica and Richard (the forged deed.) The deed listed Richard and Veronica Allen, Charlotte, and Kimberly, a minor, as the grantors, and Kimberly's signature appeared on the deed. The deed was recorded on April 26, 1989, in Pulaski County.[2] In August 1996, the Allens executed and filed a deed conveying the property in fee simple absolute to M. Shane and Lee Ann Brosh. In June 2002, the Broshes executed a warranty deed conveying the property to Desiderio Juarez, and the deed was recorded in Pulaski County. In 2008, Juarez mortgaged the property to Pulaski Bank & Trust Co.

---

[2]Charlotte died intestate in 1992.

In her petition, Kimberly requested that the court (1) determine her heirship under Ark. Code Ann. § 28-53-101 (Repl. 2012), (2) declare the forged deed fraudulent and void as applied to her heirship in the property, (3) quiet title pursuant to Ark. Code Ann. §§ 18-60-501 to -511 (Repl. 2015 & Supp. 2021), (4) vest the title in her as Juarez's cotenant, and (5) declare that any existing or potential claims adverse to her interest be declared a nullity and canceled. She also requested any monetary damages to which she is entitled. The Allens and Juarez filed separate motions to dismiss.

On December 4, the circuit court granted the Allens' and Juarez's motions to dismiss with prejudice. Kimberly filed a motion to modify the order and a petition for Rule 54(b) certification. Specifically, she requested a ruling on her heirship claim against any of the applicable respondents and the title claim against the Broshes and Pulaski Bank & Trust Co., which remained pending. The modified order dismissed with prejudice the claim for quiet title as to Juarez and the Allens, finding that the seven-year statute of limitations barred Kimberly's petition as to those parties, and the statute of limitations began to run on October 13, 1992, when Kimberly reached eighteen years of age and she had actual or constructive notice of the warranty deed dated January 10, 1989, filed April 26, 1989. The petition for quiet title with respect to the Broshes, Charlotte's estate, and Pulaski Bank & Trust Co., and the petition for heirship filed against Juarez, the Allens, and Charlotte's estate were both deemed pending, and a Rule 54(b) certificate was attached to the order. Kimberly timely filed her notice of appeal.

II. *Discussion*

3

## A. Standard of Review

When an appellant claims that the circuit court erred in granting a motion to dismiss, appellate courts review the circuit court's ruling using a de novo standard of review. *Nucor Corp. v. Kilman*, 358 Ark. 107, 186 S.W.3d 720 (2004). We will not reverse a finding of fact unless it is clearly erroneous. *Sanford v. Sanford*, 355 Ark. 274, 137 S.W.3d 391 (2003). We treat the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff. *Biedenharn v. Thicksten*, 361 Ark. 438, 206 S.W.3d 837 (2005). In viewing the facts in the light most favorable to the plaintiff, the facts should be liberally construed in plaintiff's favor. *Id.*

## B. Issues on Appeal

### 1. *Can a forged deed filed of record divest a minor owner of an estate in land inherited by intestate succession?*

Kimberly contends that her signature on the 1989 deed was forged and that her mother and stepfather repeatedly told her that she inherited nothing from her father; thus, her interest in the property was concealed from her until 2019 when she found a copy of the deed in her mother's house. Because her signature was forged, she argues, "Arkansas law protects [her] vested interests in the Property," and the circuit court erred when it found that the statute of limitations, Ark. Code Ann. § 18-61-101(a), barred her 2020 petition because she had actual or constructive notice of the deed.

Ark. Code Ann. § 18-61-101(a) provides,

(1) No person or his or her heirs shall have, sue, or maintain any action or suit, either in law or equity, for any lands, tenements, or hereditaments after seven (7) years

4

once his or her right to commence, have, or maintain the suit shall have come, fallen, or accrued.

(2) All suits, either in law or equity, for the recovery of any lands, tenements, or hereditaments shall be had and sued within seven (7) years next after the title or cause of action accrued and no time after the seven (7) years shall have passed.

Kimberly argues that our caselaw provides examples of when forged deeds do not divest a vested interest in property, and indeed, our caselaw is replete with the holding that a forged deed cannot pass title. *See Coulter v. Clemons*, 237 Ark. 227, 234, 372 S.W.2d 396, 400 (1963); *Bird v. Jones*, 37 Ark. 195 (1881); *Wilson v. Biles*, 171 Ark. 912, 287 S.W. 373 (1926); *McCarley v. Carter*, 187 Ark. 282, 59 S.W.2d 596 (1933); *Williams v. Warren*, 214 Ark. 506, 507, 216 S.W.2d 879, 879 (1949). However, the fact that a deed is forged does not overcome the statute of limitations.

*Jaramillo v. Adams*, 100 Ark. App. 335, 268 S.W.3d 351 (2007), is instructive regarding the interplay of the statute of limitations and forged deeds. In *Jaramillo*, Leonard discovered a deed twelve years after his mother had died intestate in 1992, and twenty years after his mother's signature had been forged on that deed. The forged deed conveyed his mother's property interest in certain property solely to Leonard's sister. This court held that the statute of limitations began to accrue at least by the date of his mother's death in 1992. Specifically, we held that

[a]ny reasonable inquiry would have led to the discovery of the deed, which was filed for record in 1984, and any potential forgery would have become apparent at that time. However, it was not until 2004 that Leonard filed the complaint in this case alleging that the signature on the deed was a forgery.

5

. . . Here, the question concerning the applicability of the defenses raised by Shirley was not whether the deed was forged; but rather, whether Leonard still had the right to question the authenticity of the signature on the deed twenty years after it was executed and recorded and twelve years after the death of Grace Adams. We hold that he did not.

*Jaramillo*, 100 Ark. App. at 343, 268 S.W.3d at 358. There are factual differences between the instant case and *Jaramillo*, namely, that Kimberly was fourteen years old when her signature was forged in 1989, and her mother and stepfather repeatedly told her that she had inherited nothing from her father. By contrast, Leonard was an adult who knew of the property's existence, and he claimed his interest in the property through his deceased mother whose signature was forged; however, even accepting the facts in Kimberly's complaint as true—that she was unaware of her property interest, her signature was forged, and she had no idea that any conveyance occurred—*Jaramillo* dictates that the petitioner is required to make a "reasonable inquiry" in such cases. Kimberly's second point on appeal involves the meaning of "reasonable inquiry" as we discuss below.

2. *Does filing a forged deed of record affect a true owner's title to her land within the meaning of the recording statute?*

The recording statute, Ark. Code Ann. § 14-15-404(a)(1) (Repl. 2013) provides that

[e]very deed bond, or instrument of writing affecting the title, in law or equity, to any real or personal property within this state which is or may be required by law to be acknowledged or proved and recorded shall be constructive notice to all persons from the time the instrument is filed for record in the office of the county recorder of the proper county.

Continuing the discussion above, in *Hughes v. McCann*, 13 Ark. App. 28, 31–32, 678 S.W.2d 784, 786 (1984), the appellant's fraud claim was barred by the statute of limitations. This court held that

> [b]ecause the Ferguson mortgages were recorded, appellants were on constructive notice of such mortgages as far back as 1971 and no later than 1976—five years prior to their filing this action. In *Teall v. Schroder*, 158 U.S. 172 (1895), the United States Supreme Court held that in fraud actions, for purposes of determining when the statute of limitations begins to run, parties alleging fraud are charged with knowledge of any pertinent real estate conveyances from the time such conveyances are placed in public records. Appellees urge that filing for public record and concealment are mutually exclusive. We agree.

(Some citations omitted.)

If a public record such as a deed is filed, then a claimant cannot allege concealment. Kimberly's mother and stepfather told her that she had no inheritance from her father, and her signature on the deed conveying the property to them was forged when she was only fourteen years old; however, the Allens filed their forged deed in Pulaski County, and that act is in direct opposition to concealment, according to our case law. Kimberly cites *Turman v. Sanford*, 69 Ark. 95, 61 S.W. 167 (1901), to support her assertion that the law requires only that she search the grantor index, and since her father never was a grantor, she could not be imputed constructive notice. We reject Kimberly's assertion that *Turman* applies here. Though it would be absurd to suggest that Kimberly was required to search the chain of title on every tract of land in Pulaski County, Kimberly would have found her father's name in

7

the grantee index as having received his interest from his mother—a pertinent real estate conveyance that a reasonable inquiry would have revealed.[3]

Our courts have stated the public policy regarding the statute of limitations. In *Minnesota Mining & Manufacturing v. Baker*, 337 Ark. 94, 103, 989 S.W.2d 151, 156 (1999), the supreme court held that

> [a]ny statute of limitation will eventually operate to bar a remedy, and *the time within which a claim should be asserted is a matter of public policy, the determination of which lies almost exclusively in the legislative domain, and the decision of the General Assembly in that regard will not be interfered with by the courts in the absence of palpable error in the exercise of the legislative judgment.*

(Emphasis added.); *see Bonds v. Carter*, 348 Ark. 591, 75 S.W.3d 192 (2002). The statute of limitations began to accrue in 1992 when Kimberly reached eighteen years old, and at that time she was charged with constructive notice of the deed. Kimberly filed her petition to quiet title and determine heirship in 2020, long after the seven-year statute of limitations had accrued, and we must affirm.

Affirmed.

WHITEAKER, J., agrees.

MURPHY, J., concurs.

**MIKE MURPHY, Judge, concurring**.

---

[3]Kimberly also argues on appeal that Juarez and the Broshes were not bona fide purchasers. Because we hold that the circuit court did not clearly err in determining that the statute of limitations had accrued, the issue of subsequent bona fide purchasers is not relevant to this appeal, and we decline to reach the issue.

*"Dirty deeds (done dirt cheap)"*[1]

I concur in the result; the trial court was correct in the application of the law in this matter. Pragmatism, principles of fairness, and the law's penchant for certainty in title in property transactions dictates this result. It is not a great result. The issues with this case are twofold. First, the grantor was allegedly a minor at the time of the transaction. Second, she alleges it was a fraudulent conveyance. Taking these allegations as true, title should not have passed. And yet it did.

Forged deeds cannot pass title. *Bird v. Jones*, 37 Ark. 195 (1881). And deeds executed by minors are voidable. *Bagley v. Fletcher*, 44 Ark. 153, 156 (1884). But, void or voidable, it appears to matter not, because Kimberly must first overcome the hurdle that is the statute of limitations.

Normally, to toll the statute of limitations, allegations of the fraud perpetrated must be concealed. *Delanno, Inc. v. Peace*, 366 Ark. 542, 237 S.W.3d 81 (2006). But today's holding reestablishes that the recording statute, Ark. Code Ann. § 14-15-404(a)(1) (Repl. 2013), thwarts allegations of concealment, allowing a forged instrument to blossom into good title.

A known weaknesses of the American recording system is the impracticability of determining whether, at the date of execution of the instruments forming a chain of title, the respective grantors were of legal age and mentally competent. 2 Joyce D. Palomar, *Patton and Palomar on Land Titles* § 336 (3d ed.). Why, then, beyond this lip service to voidability,

---

[1]AC/DC. *Dirty Deeds Done Dirt Cheap* (International Edition 1976).

are there no mechanisms in place to protect a minor's interest while still in infancy? Nothing in Arkansas law currently exists to address this unfortunate situation, and I am uncomfortable with having just created a roadmap on how to effectively steal land from children.

Because, regarding minors, it is doubtful that after registering to vote, the fresh-faced new adult will then proceed down the courthouse halls to search the deed records for his or her name on some nefarious forged instrument.

Under our current law, that seems the only recourse.

I concur.

*Gill Ragon Owen, P.A.*, by: *Christopher L. Travis*, *P. Drake Mann*, *Drew Benham*, and *Samuel H. Piazza*, for appellant.

*Wright, Lindsey & Jennings LLP*, by: *Stephen R. Lancaster* and *P. Collins Hickman Jr.*, for separate appellees Kaye Allen and Richard N. Allen.

*McMullan & Brown*, by: *Amy Clemmons Brown*, for separate appellee Desiderio Juarez.