MATTIE DOTSON v. MAE ALDRIDGE, ET AL

5-4837                                                   438 S.W. 2d 464

Opinion Delivered March 24, 1969

*Harold C. Rains, Jr.,* for appellant.

*David O. Partain,* for minor defendants.

*Franklin Wilder* for appellees.

CONLEY BYRD, Justice. The common source of title to the 10 acres of land involved in this litigation was Nancy P. Foster. The record shows that she lived on the land until her death, June 12, 1951. She was survived by Mae Aldridge, Troy Foster, Wilburn Foster, Lela F. Hunter, George Foster, Frank Foster, Jr., Roosevelt Foster, Ellen Thacker and Melvin Foster. All of the foregoing children except Melvin Foster, who died in 1953, are appellees.

This suit was commenced by Mattie Dotson, a sister of Nancy P. Foster, as an action to quiet title. Mattie alleged that on Nov. 24, 1945, Nancy P. Foster conveyed ten acres to Melvin Foster and his wife, Eddye; that after Melvin's death, Eddye mortgaged the lands, on Sept. 13, 1955, to the Peoples Bank & Trust Co. to secure $69.00; that Eddye was unable to repay Peoples Bank & Trust Company and made an agreement with Mattie that if Mattie would pay off the mortgage and back taxes, she could take the lands; that pursuant to such agreement, Mattie repaid the mortgage and back taxes in the amount of $101.29 and entered into possession of the lands;.and that Mattie has been in possession adversely to the rights of all others and has paid taxes thereon since 1954. Named as defendants in Mattie's petition were Donald R. Gordey, formerly Foster, Carolyn Jane Foster, Delores Ann Gordey, formerly Foster, Jimmy Dale Gordey, formerly Foster, and Diann Schrider—the first four named defendants were children of Melvin and Eddye Foster and the latter, Diann Schrider, is a daughter of Eddye Foster by another marriage.

The children of Eddye Foster, answering through their guardians and next friends, denied that Eddye had made any agreement with Mattie as alleged, and asserted that they were the owners of the 10 acres of land involved.

The appellees, all of the children of Nancy P. Foster except Melvin Foster, intervened. They alleged

that the deed dated Nov. 24, 1945, from Nancy P. Foster to Melvin and Eddye Foster was a forgery, and that Mattie Dotson had been in possession of the 10 acres with the intervenors' permission.

The trial court found that the deed from Nancy to Melvin and Eddye was a forgery, that Mattie had been in possession of the lands with the permission of the appellees and entered a decree in accordance with their prayer for partition sale of the lands. Both Mattie and the children of Eddye have appealed raising the issues hereinafter discussed.

### THE DEED

The notary public who took the acknowledgment testified that she knew Nancy P. Foster, her son Melvin, and Melvin's wife Eddye, that Nancy Foster and one of her daughters came to her office to make the deed, that she typed the deed in accordance with Nancy's instructions and that it was signed at Mrs. Foster's request. Since Mrs. Foster couldn't write, she had Mrs. Foster touch the pen before she took the acknowledgment. The deed was not delivered to Melvin in her presence.

Cora Gordey, the mother of Eddye Foster, testified that during "hog killing" time in 1945, Nancy Foster and Melvin came by her house and declined to stay for dinner because they were going to have a deed made to Melvin. They came by her house to pick up a sausage grinder. Eddye was not with them and she is fairly certain Eddye was at home that day.

Pearl Foster, wife of Wilburn Foster, testified that in November 1945, she went with Nancy Foster to the notary public's office about drawing up a deed. The others there were Melvin Foster, Eddye Foster and Pearl's husband, Wilburn Foster. When she went in, the notary public had started to type and asked whose name Nancy wanted on the deed. When Nancy

Foster said that she wanted Melvin and Ellen's name on the deed (Ellen is Nancy Foster's baby daughter), Melvin's wife spoke up and said it should be made to Melvin and her, and then to Ellen. That after the matter went back and forth between Nancy and Eddye, Nancy Foster said, "If I can't have it like that, I will just let it go and they can fight over it." Thereafter, the notary gave the paper she had started to Nancy Foster and everybody left. Pearl never saw the deed again after that.

Mae Aldridge, Nancy's oldest daughter, lived about a mile from her mother. She testified that shortly before her mother's death on June 12, 1951, she went to the Citizens Bank in Van Buren to pay off a note that her mother owed and while there she got all of her mother's papers at the bank, including the deed. She says that the deed was not signed and did not have her mother's mark on it. She had possession of these papers until two weeks after her mother's death. When asked how Melvin got the deed she stated, "He asked me, he wanted to see the deeds, and wanted to see the mortgage after I picked them all up. I showed them to him. He looked at them, and then just stuck them in his pocket and walked off." She first found out about the deed here involved in 1952 when she heard that Melvin was mortgaging the land. At that time she went to the bank and was shown the deed. She told the bank not to let Melvin make any more mortgages on the property.

The record shows that Nancy P. Foster mortgaged the lands on Nov. 19, 1947, on Dec. 4, 1948, and again on Feb. 19, 1950. In each instance the mortgages executed by Nancy Foster during her lifetime and subsequent to the date of the alleged deed were signed by mark and witnessed in accordance with Ark. Stat. Ann. § 27-109 (Repl. 1962). There was ample other evidence also showing that Nancy Foster always affixed her signature in this manner. In view of the testimony and

the recorded documents, among which is the recordation of the alleged deed on July 5, following the mother's death on June 12, 1951, we hold that a preponderance of the evidence supports the Chancellor's findings that the deed was a forgery.

### STATUTE OF LIMITATIONS

Appellants argue that all the appellees were put on notice of the deed from Nancy Foster to Melvin and Eddye Foster in 1952 and that consequently their cause of action to cancel the forged deed is barred by the seven year statute of limitations, Ark. Stat. Ann. § 37-101 (Repl. 1962). Assuming without deciding that appellees were put on notice of the forged deed in 1952, we do not agree that the statute of limitations prohibits a person in possession from suing to remove a cloud upon his title even though the cloud had been in existence and within the knowledge of the possessor for more than seven years. The rule is that there is no necessity for resorting to legal remedies until there is an interference with possession, *Penrose* v. *Doherty*, 70 Ark. 256, 67 S.W. 398 (1902). There is no showing here that either Melvin or Eddye took possession of the premises during their lifetimes and, as will be shown, Mattie Dotson at all times held the lands with permission of appellees.

## ADVERSE POSSESSION

The evidence in the record shows that Lela F. Hunter and her husband, Virgil, went into possession of the lands following Nancy Foster's death and remained there for two or three years. Thereafter the land was vacant until Mattie Dotson took possession sometime after Dec. 18, 1957. On that date she paid off the mortgage that Eddye Schrider, formerly Eddye Foster, had executed to the People's Bank & Trust Company on Sept. 13, 1955, and at the same time paid the money for the back taxes from 1952 to the date of her transaction with the bank. She has had continuous posses-

sion of the property since that time and paid all taxes as they accrued up to and through 1966. On direct examination she was asked:

"Q. Now, Mattie, have you at all times occupied the land? By that, I mean had control of it and exercised control over it, and did these people know that you were claiming the land all these years?

A. There wasn't nobody, I never did say anything about claiming the land until I brought them papers up there to you."

Again, on cross examination she was asked:

"Q. Did you think that Melvin's brothers and sisters had some interest in this property?

A. I thought that they just had as much interest in it as Melvin did."

In addition to the above, the record shows that Mattie Dotson did not pay the mortgage or take possession of the land until after the death of both Melvin and Eddye Foster.

On Nov. 16, 1966, Mattie sold ½ acre of the land for $300.00 to Eugene O'Bar. O'Bar had erected a building on the half acre prior to trial. The trial court awarded the half acre to O'Bar in its decree and no appeal has been taken therefrom by any of the parties.

Mattie Dotson readily admits that she talked to Wilburn about taking possession of the lands before she paid off the mortgage at the bank. Wilburn testified that Mattie Dotson asked him about working the place and that they arrived at an agreement whereby she could work the place for three years if she would pay off the mortgage and the taxes. Thereafter she kept the taxes paid and no mention was made that the character of her possession was not permissive. The

testimony of Wilburn is substantiated by the testimony of Lela Hunter and Mae Aldridge, both of whom testified that Mattie asked them for permission to enter into possession of the lands.

Thus when we read the whole record, together with the damaging admissions made by Mattie Dotson, we must find that a preponderance of the evidence fully supports the Chancellor's finding that Mattie Dotson entered into possession of the lands with the permission of the children of Nancy Foster. Since there is argument that the Chancellor's opinion and the decree were erroneous because he considered Mattie Dotson as a child of Nancy Foster, instead of a sister, we have reviewed the record and find that a preponderance of the evidence would support no other conclusion on the issue of adverse possession.

### CONCLUSION

From the foregoing it is seen that the children of Eddye Foster (Schrider) are foreclosed from claiming the land because the alleged deed from Nancy Foster to Melvin and Eddye Foster is a forgery. Since Mattie Dotson went into possession of the lands with the permission of Nancy Foster's children, it obviously follows that her claim of adverse possession is without merit, *Still* v. *Still*, 239 Ark. 865, 394 S.W. 2d 733 (1965).

In view of the fact that both appellants claim the decree is erroneous in that it classifies Mattie Dotson as an heir of Nancy P. Foster, we are remanding the case to the trial court with directions to clarify the decree to correct this erroneous impression.

Affirmed as modified.