Cite as 2025 Ark. App. 4

# ARKANSAS COURT OF APPEALS
DIVISION I
No. CV-22-804

| | |
|---|---|
| TIM ROBERSON, ADMINISTRATOR OF THE ESTATE OF CHRISTOPHER WAGONER, DECEASED<br><br>APPELLANT<br><br>V.<br><br>LOY RAY WAGONER TRUST, CINDY HONEYCUTT, LARRY HARP, AND SANDRA TRAMMELL, AS TRUSTEES OF THE LOY RAY WAGONER TRUST<br><br>APPELLEES | Opinion Delivered January 15, 2025<br><br>APPEAL FROM THE NEWTON COUNTY CIRCUIT COURT [NO. 51CV-20-52]<br><br>HONORABLE JOHNNIE A. COPELAND, JUDGE<br><br>AFFIRMED |

## N. MARK KLAPPENBACH, Chief Judge

This case is about whether a piece of property belongs to the Loy Ray Wagoner Trust or the estate of Christopher Wagoner (the "Estate"). We affirm the circuit court's order, which ruled that the Estate's claim to the property is barred by the statute of limitations.

### I. *Background*

Loy Wagoner owned more than 1,300 acres in Newton County (the "Property"). He had one child, Christopher Wagoner. On July 1, 2002, after Loy and his ex-wife had divorced, Loy established the Loy Ray Wagoner Trust (the "Trust"). His lawyer, Peter DeStefano, set up the Trust. On the same day, Loy executed a quitclaim deed to himself as trustee of the Trust for a portion of the Property. On July 1, 2005, Loy executed a second quitclaim deed to himself as

trustee of the Trust for the rest of the Property. Collectively, we will refer to these as the "Deeds." Loy left the Deeds with DeStefano with instructions to record the deeds after his death.

Loy proceeded to build cabins on the Property and operated them as a commercial hunting club known as the Buffalo River Hunting Club. During his lifetime, Loy executed two amendments to the Trust. The second amended declaration of Trust provided that Christopher would receive a life estate in Loy's homestead and that the remaining Trust assets were to be distributed to Christopher's children. In the event Christopher died without children, the proceeds of the Trust would be distributed to Loy's nieces and nephews.

On January 10, 2013, Loy died. DeStefano recorded the Deeds on January 14 and March 4. It is unclear why the Deeds were recorded on different days, but it does not matter for our analysis. After recording the first deed, DeStefano mailed it, the will, and the Trust documents to Christopher. Wilma Willis, Loy's caretaker and significant other, served as successor trustee and continued operating the hunting club after Loy died. In 2015, Christopher sued Wilma individually and in her capacity as successor trustee in an attempt to enforce the term of the Trust bequeathing to him a life estate in Loy's homestead. The life-estate portion of that 2015 lawsuit was resolved in an agreed order filed on August 8, 2016, which set out that Wilma was the trustee of the Trust, that the Trust owned certain property, and that Christopher owned certain other property. Wilma died on December 24, 2019. Christopher died without children shortly thereafter, on January 4, 2020. Tim Roberson was appointed administrator of the Estate on January 9.

The Estate filed a petition on November 5, 2020, for declaratory judgment and to quiet title alleging that the Property passed to Christopher upon Loy's death by the laws of intestate

2

succession.[1]  The Estate alleged that the Deeds were null and void for failure of delivery to, and acceptance by, the Trust.  Alternatively, the Estate argued that Christopher is the sole beneficiary of the Trust.  The Trust and the trustees (collectively, the appellees) filed a counterclaim for slander of title and a declaratory judgment.  During the pendency of this litigation, the Property sold for $2,337,536.83, and the proceeds were deposited into the registry of the circuit court.

The parties filed competing motions for summary judgment.  After a hearing, the circuit court entered an order declaring that the appellees were entitled to the proceeds from the sale of the Property.  In the order, the circuit court first found that the statute of limitations began to run when the deeds were recorded, which was March 4, 2013, at the latest.  On that basis, the circuit court ruled that the statute of limitations barred the Estate's claims relating to the delivery and acceptance of the Deeds.  The circuit court also ruled that, in any event, the Deeds were delivered by Loy to the Trust, and the Property had become an asset of the Trust at that time.  The Estate filed a timely notice of appeal.

## II. *Standard of Review*

This case involves dueling motions for summary judgment.  When both parties move for summary judgment, they are essentially agreeing that no material facts remain.  When the parties agree on the facts, we simply determine whether the appellee was entitled to judgment as a matter of law.  *Leavell v. Gentry*, 2021 Ark. App. 412, 636 S.W.3d 794.  In determining the issues of law presented, our standard of review is de novo.  *Id.*

## III. *Analysis*

---

[1]The Estate alleged that although Loy had executed a will, it was not timely admitted to probate and was now barred by the statute of limitations.

3

## A. Finality of Order

We first address the appellees' contention that the circuit court's order is not final. We hold that the summary-judgment order is final and appealable and that this court, therefore, has jurisdiction.

The Estate brought claims for declaratory judgment and to quiet title. The appellees brought counterclaims for slander of title and for declaratory judgment. After the circuit court entered an order to allow the sale of the Property, the Estate filed an amended petition seeking a declaratory judgment that it was entitled to the proceeds from the sale, but it did not renew the quiet-title claim, presumably because title could not be quieted in any of the litigants once the Property had been sold.

On July 28, 2021, the circuit court entered an order dismissing the slander-of-title counterclaim with prejudice after "being duly advised that the Parties have compromised and resolved the claim for slander of title." Both sides moved for summary judgment regarding ownership of the Property. The circuit court granted summary judgment to the appellees, entering an order finding that the Property was owned by the Trust before the sale and declaring the appellees to be the owners of the full amount of the proceeds from the sale of the Property. Accordingly, there are no issues remaining regarding the ownership of the Property or the proceeds from the sale of the Property. The only arguable claim remaining at this point was the quiet-title claim articulated in the Estate's initial petition. However, the Estate abandoned any pending but unresolved claim in its notice of appeal pursuant to Arkansas Rule of Appellate Procedure–Civil 3(e)(vi).

The appellees filed a motion for attorneys' fees after the circuit court granted the appellees' motion for summary judgment. The record on appeal does not show that the circuit court has ruled on the motion for attorneys' fees. Arkansas appellate courts have consistently held that the award of attorney's fees is a collateral matter. *Harold Ives Trucking Co. v. Pro Transp., Inc.*, 341 Ark. 735, 19 S.W.3d 600 (2000). Collateral matters remain in the circuit court's jurisdiction even after an appeal has been docketed and do not deprive this court of appellate jurisdiction. *Id.* The appellees argue that claims for attorneys' fees are not always collateral because they can be an element of compensatory damages. However, the appellees have failed to show that attorneys' fees were an element of damages for their claims of declaratory judgment or slander of title, both of which have been resolved. For these reasons, we find that the circuit court's order is final and appealable.

## B. Mootness

Appellees present an additional procedural hurdle, arguing that the appeal is moot because the judgment against the Estate was voluntarily paid. We disagree that the payment was voluntary.

When an appellant voluntarily pays a judgment, any appeal of the judgment by the appellant becomes moot. *Reynolds Health Care Servs., Inc. v. HMNH, Inc.*, 364 Ark. 168, 182–83, 217 S.W.3d 797, 809 (2005). One of the most important factors to consider when determining whether a payment is made voluntarily is whether the appellant posted a supersedeas bond at the time it satisfied the judgment. *Id.*

It is important to note the timing of events. The circuit court entered its order granting summary judgment in the appellees' favor at 4:00 p.m. on Friday, September 9, 2022. The

5

circuit court then entered an order directing the release of funds held in the court's registry at 2:20 p.m. on Monday, September 12, 2022. Considering that most of the time between the two orders was over a weekend, appellants had only approximately eight hours to file a notice of appeal, procure a supersedeas bond, obtain approval of the bond, and post it. That is not a reasonable expectation. Further, the supreme court has held that when a judgment was satisfied as a result of a levy on a writ of execution, the appellant was not considered to have voluntarily paid the judgment. *Id.* at 183, 217 S.W.3d at 809. That is analogous to what happened here. The circuit court ordered that the funds be disbursed before the Estate had time to post a bond. The Estate had no control over the funds that were used to satisfy the judgment because they were in the registry of the court, and the circuit court ordered that the funds be disbursed. Considering all these factors, we hold that the judgment was not voluntarily paid, and the appeal is not moot.

### C. Statute of Limitations

We now turn to the merits of the appeal. The statute of limitations to clear a cloud on title like the one in this case is seven years. Ark. Code Ann. § 18-61-101(a) (Repl. 2015). The issue in this case is when the statute of limitations accrued.

The circuit court found that the statute of limitations began to run when the Deeds were recorded, which was January 14 and March 4, 2013. We agree. This court addressed a similar issue in *Griffith v. Juarez*, 2022 Ark. App. 206, 645 S.W.3d 339. In that case, Griffith filed a petition to quiet title alleging that when she was a minor, her mother and stepfather had forged her signature on a deed. The deed was recorded in 1989. The circuit court found that Griffith's 2020 quiet-title claim was barred by the seven-year statute of limitations, which began to run

6

when Griffith turned eighteen years old in 1992. This court agreed on appeal, holding that despite Griffith's claim that her interest in the property was concealed from her until 2019, she was charged with constructive notice of the recorded deed when she turned eighteen years old. We cited the recording statute, Arkansas Code Annotated section 14-15-404(a)(1) (Repl. 2013), which provides that

> [e]very deed, bond, or instrument of writing affecting the title, in law or equity, to any real or personal property within this state which is or may be required by law to be acknowledged or proved and recorded shall be constructive notice to all persons from the time the instrument is filed for record in the office of the county recorder of the proper county.

Here, DeStefano recorded the Deeds in January and March 2013. The mere act of recording the Deeds provides notice under Arkansas law. Ark. Code Ann. § 14-15-404(a); *Griffith*, 2022 Ark. App. 206, 645 S.W.3d 339. In addition to the constructive notice he is charged with by statute, Christopher received actual notice of the potential cloud on his title when DeStefano mailed him a copy of the first recorded Deed and the Trust documents after Loy's death. The Estate did not file the quiet-title action until November 5, 2020, which was months after the statute of limitations had expired for either parcel.

The Estate argues that the act of recording the Deeds was not sufficient to start the running of the statute of limitations. Citing *SEECO, Inc. v. Holden*, 2015 Ark. App. 555, 473 S.W.3d 36, and *Dotson v. Aldridge*, 246 Ark. 456, 438 S.W.2d 464 (1969), the Estate contends that the Trust must have adversely possessed the Property before the statute of limitations would have begun to run against the Estate's claims. *SEECO*, however, involved a statute of limitations for tax deeds that specifically contains a two-year adverse-possession requirement. *See* Ark. Code

7

Ann. § 18-61-106 (Repl. 2015). While *Dotson* involved the statute of limitations at issue here, it is also distinguishable. *Dotson* states that until there is an interference with possession, the statute of limitations will not prohibit "a person in possession from suing to remove a cloud upon his title." *Dotson*, 246 Ark. at 460, 438 S.W.2d at 466. Because the Estate has not established that it was in possession of the Property, its claims were not shielded from the statute of limitations.

In its remaining arguments on appeal, the Estate argues that the circuit court erred in finding that the Deeds were delivered to the Trust. Because the statute of limitations barred the Estate's action, we do not reach the delivery issue.

For the reasons stated above, the circuit court's order is affirmed.

Affirmed.

HARRISON and MURPHY, JJ., agree.

*Conner & Winters, LLP*, by: *Todd P. Lewis* and *Jorge J. Rodriguez*, for appellant.

*Tim Cullen*, for appellees.